FOURTH DEPARTMENT, MAY, 1940.
(May 8, 1940.)

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v. EDWARD LARKMAN, Appellant.

All concur, except Harris and McCurn, JJ., who dissent and vote for reversal and for granting a new trial in an opinion by Harris, J. Present — Crosby, P. J., Cunningham, Taylor, Harris and McCurn, JJ.

HARRIS, J. (dissenting). The defendant appeals from a judgment of conviction pronounced on a verdict of a jury in the Erie County Court of guilty on three counts for violation of section 1308 of the Penal Law (criminally receiving stolen property). Originally the indictment contained the accusation of these three violations and the accusation of two violations of the statute forbidding the crime of burglary.

The claim of the defendant, that there should be a reversal of such judgment is on the following grounds: 1. That his guilt was not proven beyond a reasonable doubt. 2. That he did not have a fair and impartial trial as guaranteed by law. (*People* v. *Infantino*, 224 App. Div. 193.)

The last named objection is based on the claimed admission of improperly received testimony and the alleged antagonistic conduct of the court. Such antagonistic attitude is said to have been the interjection of the personality of the court into the trial, but a careful reading of the record shows that nothing of this sort occurred and that the personal attitude of the court was most impartial.

The crimes for the conviction of which the defendant was indicted and tried were set forth in one indictment and included: First Count — Burglary in Third Degree, in feloniously breaking into and entering the garage and building of Arthur Beyer and Fegemus F. Lippert with intent to commit a crime therein. Second — Criminally receiving the property stolen at the time of the burglary mentioned in the First Count. Third — Criminally receiving certain other property stolen in the burglary mentioned in the First Count. Fourth — Burglary

in the Third Degree, consisting of feloniously breaking into and entering on the first day of December, 1938, the garage of Edwin Berney with intent to commit a crime therein. Fifth — Crime of criminally receiving the property stolen at the time of the burglary mentioned in the Fourth Count. The inclusion of these various counts was proper in one indictment. (Code Crim. Proc. § 279.)

If believed by the jury, there was sufficient proof on the trial to establish the commission of the burglaries charged in the indictment and of the exclusive possession by the defendant after the commission of such burglaries of certain articles stolen from the premises which had been burglarized. The total value of such articles was well within fifty dollars. Such exclusive possession of goods recently stolen, if unexplained or falsely explained, was sufficient to establish guilty knowledge of the accused. (*People* v. *Galbo*, 218 N. Y. 283, at p. 290; *Goldstein* v. *People*, 82 id. 231; *People* v. *Rogan*, 223 App. Div. 242; affd., no opinion, 249 N. Y. 544.)

On his arraignment for sentence on the convictions as above stated, the defendant was faced with an information charging him with having been convicted of a felonious rape in the second degree on the 8th of March, 1924, and murder in the first degree on the 1st day of March, 1926. He admitted his identity as the person who had been previously convicted as above stated. Sentence was then imposed upon him as follows: On the conviction under Count No. 2 of the indictment, imprisonment in State Prison for a term of from twenty years to forty years; on the convictions under Counts No. 3 and No. 5, sentence was suspended.

The claim of the defendant that he did not have a fair and impartial trial is to be considered in connection with three matters of proof permitted to come before the jury:

The district attorney introduced, and the trial court, over the objections of the defendant's counsel, heard, testimony as follows:

1. A police officer, who was a witness, testified that in the finding of the articles the defendant was asked as to where he had secured such articles, and that the defendant then replied that he had bought them from a fellow-worker on a Works Progress Administration project whose name was Jimmie Clarke. If such testimony as to the purchase was sufficient to explain to the jury the possession by the defendant of the goods in question then the jury would have been justified in acquitting the defendant, because such statement by him could be an explanation of legal possession by him of the articles. Continuing his testimony, the police officer stated that he had attempted to locate such Jimmy Clarke and had been unable to do so. His attempts consisted of telephoning to the Works Progress Administration office and his (the witness') statement of the results of such inquiries. Such testimony on the part of the police officer was hearsay and should not have been admitted as proof of whether or not the said Jimmie Clarke existed. The jury should not have been permitted to hear such hearsay testimony.

2. Proof was made that in the automobile the defendant usually drove about at the time of the finding of the stolen articles, there were certain crowbars and automobile equipment. There can be no other inference except that this testimony was introduced and received in an effort to show that the defendant had these crowbars and other equipment in his possession in the car for an improper purpose. There was no connection of such crowbars and equipment with the burglaries in question, and for the defense there was sworn his supervisory employer who testified that the crowbars were necessary tools in the work of the defendant.

3. Over the objection of the defendant, the district attorney was permitted to place in evidence before the jury testimony of a certain conversation held in the office of the district attorney by the district attorney, a police officer and the defendant. This conversation had to do with the efforts of the district attorney to apprehend a man named Pelihowski, commonly known as " Ziggie," who was being searched for by the Buffalo authorities on a charge of murder in the first degree. This conversation was introduced as part of a general conversation in which it was claimed the defendant made confession as to his criminal possession of the articles in question. The importance of the admission or exclusion of this statement should be considered in the light of the following stated facts, which are not altogether a part of the record but would be matters of common knowledge in the community in which the defendant was being tried and from which the jury was drawn: The defendant, in the year 1926, was accused and convicted of the crime of murder in the first degree, and that conviction became, and still is, a cause most notoriously known in that community. From the time of his conviction for murder and for many years the defendant and his then counsel claimed that he was innocent of the crime. Judgment on such conviction was sustained. (*People* v. *Larkman*, 244 N. Y. 503, November, 1926.) Counsel for the defendant continued his efforts to secure the release of the defendant. Such efforts consisted of applications to the Governor of the State for pardon. The basis of the request for the pardon was that there had been an erroneous conviction on a mistaken identification. The then Governor thought sufficiently well of the claims of the defendant that he commuted the sentence to one of life in prison on January 13, 1927. Efforts to clear the name of the defendant of this crime continued through that administration, through the administration of the next Governor, and finally until the administration of the present Governor. During the progress of these efforts in seeking the solution of other murders in Erie county certain persons involved in these other murders made statements which, if true, would have cleared the defendant of the conviction of guilt under which he had been sentenced and would have shown a criminal connection of such Pelihowski with the murder for which the defendant was convicted. These claims were apparently so well founded that the present Governor, on December 18, 1933, pardoned the defendant for his conviction of murder in the first degree.

Whether or not, with this information before both the district attorney and the trial court (and the information was such an information of public knowledge and record that both must have known of the existence of the same) the testimony in reference to Pelihowski should have been presented before the trial jury in the trial of the defendant, is most serious. (*People* v. *Loomis*, 178 N. Y. 400.) It can well be said that the jury hearing this testimony, and having some knowledge of the *Larkman* murder case, would from such testimony gather that Larkman was implicated either in the murder from which he was pardoned or was familiar with those implicated in such murder. One can well surmise that a jury trying a man on a charge of burglary or criminally receiving stolen property would have one opinion of a man who associated with murderers and another of him if he were not accused before them of such association. Or, it might also be well surmised that certain jurors who knew of the commutation of Larkman's sentence and his later pardon, on hearing such testimony, might feel that he was erroneously granted clemency by the Governor.

There is before the court the rule so well expressed in *People* v. *Infantino* (*supra*) that it is not necessary to show that erroneous testimony did in fact prejudice the defendant. It is sufficient that such testimony might have prejudiced or affected his rights. It is only fair to conclude that the hearsay testimony in reference to Clarke, the testimony in reference to the articles in the automobile of the defendant, which apparently was there legitimately, and the testimony in reference to his association with, or knowledge of, Pelihowski, should not have been before the jury on the trial for burglary and criminally receiving stolen property. These all had to do with the inferences which the jury were to draw from the exclusive possession by the defendant of recently stolen property. The trial court should have borne in mind the warning sounded in the time of Lord Hale that presumptive evidences must be very warily pressed, for it is better that five guilty persons should escape unpunished than one innocent person should be convicted. A conviction of the defendant herein, without this inadmissible testimony before the jury, could be sustained; with such testimony before the jury and on this record it is unfair to sustain such conviction.

The judgment of conviction from which appeal is made should be reversed and the action returned for a new trial.

McCurn, J., concurs with Harris, J.