THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* ANTONIO INFANTINO, Appellant.

Fourth Department, June 29, 1928.

*Charles D. Newton [George D. Newton* of counsel], for the appellant.

*William F. Love [William L. Clay, Assistant District Attorney,* of counsel], for the respondent.

SAWYER, J. At about five-thirty o'clock in the afternoon of July 7, 1927, one Alfio Boscarino, while standing on the sidewalk in front of the premises known as 191 Clifford avenue in the city of Rochester, was shot from a passing automobile and seriously wounded.

Defendant has been convicted for that crime and brings this appeal from the judgment thereon.

His conviction is supported by Mr. Boscarino's positive identification of him as one of the persons by whom the shooting was done, together with proof of various other facts and circumstances which, the People claim, corroborate the story of the complaining witness and connect defendant with the crime.

The evidence of defendant's guilt is not particularly clear or convincing although there is sufficient to present a question of fact

for the jury and but for certain trial errors disclosed by the record we would be disinclined to interfere. But in so close and doubtful a case these assume great importance and defendant must, on appeal, be given their full benefit. (*People* v. *Montesanto*, 236 N. Y. 396; *People* v. *Hinksman*, 192 id. 421; *People* v. *Latshaw*, 205 App. Div. 449.)

Defendant was arrested at about six o'clock in the evening following the shooting. From then, to and including July nineteenth following, he was from time to time questioned at length by detectives and other police officers of the city, including one occasion at the hospital where the complaining witness Boscarino had been taken for treatment.

At the trial John Haggerty, a stenographer of the detective bureau of the police department of the city of Rochester, was called as a witness and testified that he was present at each and all these various police inquisitions and made a stenographic record of the questions propounded to defendant and his answers, if any, thereto, also noting whenever defendant either refused to answer or stood silent. He was then, over defendant's proper objection and exception, permitted to testify from his notes as to each of these various examinations. This testimony was, as was stated by the learned trial judge in his charge to the jury, received under section 395 of the Code of Criminal Procedure, as being defendant's confession. It occupies nearly forty pages of the trial record and from its beginning to its ending there is not to be found any statement by defendant admitting, directly or indirectly, that he had anything to do with the crime in question; nor does it contain an admission of any facts or circumstances that tend to connect him therewith unless it be that, in the afternoon of the day before the shooting, he borrowed, from a friend, an automobile alleged to be that from which the shooting was done, but coupled with this his further statement that he returned same to its owner the evening of the same day, which is corroborated by other testimony in the case.

The People were thus enabled, as a part of their direct case, to lay before the jury the fact that defendant was a man of bad character; that he had been convicted and imprisoned for the crime of counterfeiting; that he had received a probationary sentence of two years on a conviction for carrying dangerous weapons; that his picture was held in the criminal records of the Rochester police department; that he was engaged in the illegal manufacture and sale of whisky, living and sleeping in the place where that business was carried on, which he refused to name, and that he was traveling from city to city without any apparent legitimate reason therefor.

It would be difficult to believe otherwise than that the jury must have thereby become prejudiced against the defendant and carried that prejudice into its consideration of his case. It is not necessary, however, to show that the erroneous testimony did in fact prejudice the defendant. It is sufficient that it might have affected or prejudiced his rights. (*People* v. *Oxfeld*, 121 Misc. 524.)

The appeal in this last cited case was decided by the Second Department (208 App. Div. 713) where the conviction was reversed because of the improper admission of testimony by a police officer regarding a former crime. It there appeared that the officer who arrested defendant was permitted to testify that the defendant had confessed to him that he had committed a similar crime about three years prior thereto and that sentence had been suspended. (*People* v. *Oxfeld*, 121 Misc. 524; 208 App. Div. 713.)

The competency of admissions of previous crimes was discussed by the Court of Appeals in *People* v. *Loomis*, where there is quoted with approval the proposition that " a confession by the accused of a crime other than that charged in the indictment, while not admissible as a substantive fact, may, when not separable from a competent confession, go to the jury, under cautionary directions from the court," and the rule was laid down that where such a confession was separable from one competent, its admission would constitute reversible error, the court saying, " a simple statement from the district attorney that he desired only that portion of the conversation which related to the crimes charged would have eliminated everything else without the slightest injury to his case.". (*People* v. *Loomis*, 178 N. Y. 400, 405, 406.)

Here we have no confession whatsoever of the crime charged. The testimony concerning these police examinations is that whenever the charge against defendant was touched upon, he either made negative answers to the questions, refused to answer or else kept silent.

Moreover, the witness was, again over objection and exception, permitted to testify as to the many questions asked concerning the assault on Boscarino, and to then state "no answer." This seems to have been done on the theory that by standing silent when he might answer, defendant is deemed to admit the charge; that silence means consent. Once in the record, these omissions of defendant to reply to the questions of the police were used with telling effect by the assistant district attorney in his summary to the jury, where, at the close of an intemperate reference to defendant, as portrayed by the Haggerty testimony, he told the jury: " A very smart thing? If he had been innocent of that

crime, he certainly would have told where he was. Picture any one of you men locked up at six o'clock tonight and asked where you were coming from on your way home from here; decide whether or not you would tell them what had happened." In presenting this testimony and so stressing it before the jury the People entirely ignored the fact that being under arrest charged with crime, defendant was under no obligation, legal or otherwise, to answer questions of that kind and that no damaging inference against him can be drawn from either his silence or refusal to reply. (*People* v. *Smith*, 172 N. Y. 210, 234; *People* v. *Marendi*, 213 id. 600, 613; *McCarthy* v. *U. S.*, 25 F. [2d] 298.) The course of trial so adopted was not only prejudicial error but an invasion of his rights that must have been disastrous to any hopes for acquittal he might otherwise have entertained.

Again, when he was taken to the hospital and confronted with the complaining witness, the proceedings were also taken by Mr. Haggerty who, from his notes, testified, over similar objection and exception, that defendant was then and there identified by Boscarino as being one of the men who shot him. No claim is made that the death of Boscarino was at any time anticipated by him or any one else.

On the trial Boscarino had identified defendant as his assailant. No rule of evidence is better settled than that testimony of previous identification by a witness testifying at the trial to identity is incompetent, being no more than a corroboration of the witness by his own previous declaration. (*People* v. *Jung Hing*, 212 N. Y. 393; *People* v. *Ragazinsky*, 195 App. Div. 743; *People* v. *Russell*, 197 id. 239; *People* v. *Malkin*, *No. 2*, 218 id. 635.) Under the authority of section 393-b of the Code of Criminal Procedure, effective September 1, 1927, Boscarino himself might have testified to his identification of defendant at the hospital but the rule as to proof, by others, of such previous identification, remains unaltered.

Digressing for the moment from the testimony of the witness Haggerty, his story of the identification of defendant at the hospital was incompetently corroborated by two police officers there present. One of these, Detective Lambiase, spoke Italian and understood that part of the conversation had in that language. Instead of being used as a witness on the People's direct case, he was reserved until after defendant had rested and was then called in rebuttal to testify to this same conversation. This was objected to but was admitted on the statement of the assistant district attorney that defendant had testified that Boscarino said, at the hospital interview, that he (Infantino) did not shoot him.

An examination of Infantino's testimony reveals that not only

did he not make the alleged statement but, on the contrary, that he definitely and distinctly admitted that Boscarino then charged that the shooting had been done by defendant and his brother.

To quote from *People* v. *Jung Hing* (*supra*): " this evidence was received not merely in violation of the defendant's right to a fair trial, but in contravention of a rule which we cannot ignore without introducing confusion into the body of our law."

Authority for the admission of this evidence was again sought to be found in the fact that defendant, as is claimed, stood silent in the face of the accusation and, therefore, was presumed to have consented to its truth; but, as has already been said, he was in custody under a charge of crime and ordinary caution demanded that he remain silent and under such circumstances the law protects him in so doing. (*People* v. *Loomis, supra; People* v. *Marendi, supra; McCarthy* v. *U. S., supra.*)

It is unnecessary to consider the Haggerty testimony in further detail, but the subject should not be left without calling attention to the effect of its admission upon what may, for want of a better word, be called the " tactics " of the trial. The People's evidence, aside from the identification of defendant by Boscarino, was insufficient to sustain a conviction. It had been demonstrated from the latter's examination that his character as a peaceful and law abiding citizen was but little, if any, better than that of defendant and the jury might well have given little or no credit to his statements. He and Infantino had known each other from boyhood and had been somewhat intimate. No motive for the attack was competently shown or attempted to be shown. In such situation defendant, who as a witness was clearly open to discredit, might have, perhaps with wisdom, chanced his freedom on the weakness of the People's case. With the almost certain prejudice engendered against him by this mass of incompetent matter and such real incriminating facts as were before the jury, he could do nothing other than to proceed to his defense notwithstanding that, even though innocent of this particular crime, the value of his testimony must inevitably be demolished on cross-examination by necessary admissions concerning his past life.

No matter what his own character may have been, it is axiomatic that the defendant was entitled to a fair trial; this he did not have.

Other alleged fatal errors are called to our attention; sufficient has been already said, however, to indicate our conclusion that a reversal of this judgment must be directed. It is, therefore, needless to discuss these or say more except that the cross-examination of defendant transcended all legal limits as well as the very wide discretion permitted therefor. Had it been deliberately planned

for the purpose of the convicting of defendant by innuendo and prejudice, the result could not have been more surely accomplished.

The judgment should be reversed and a new trial granted.

All concur. Present — HUBBS, P. J., SEARS, CROUCH, TAYLOR and SAWYER, JJ.

Judgment of conviction reversed on the law and facts and a new trial granted.