THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* DAVID HYMAN and HAROLD BRINN, Appellants.

First Department, July 1, 1954.

*Abraham J. Gellinoff* of counsel (*Gershman & Gellinoff,* attorneys), for appellants.

*Walter E. Dillon* of counsel (*George B. De Luca, District Attorney*), for respondent.

Cohn, J. Defendants, after a trial have been convicted of the crime of abortion. Each was given a suspended sentence. From the judgments of conviction this appeal is taken.

Each defendant, a practicing physician of good repute for many years, took the witness stand and denied the commission of the crime. While competent evidence adduced upon the trial was sufficient to sustain the verdict of the jury adjudging defendants guilty, we are compelled to conclude that defendants' right to a fair trial was infringed by the interjection of harmful and incompetent evidence constituting substantial and prejudicial error. (*People* v. *Marshall,* 306 N. Y. 223, 228.)

Upon the trial, testimony was elicited to the effect that each defendant while under arrest and in custody at the police station had refused, as was his right, to answer certain questions which touched upon the commission of the crime alleged to have been committed.

Thus in cross-examining defendant Harold Brinn, the prosecutor inquired as follows:

" Q. Now, do you remember Mr. Goldsmith asking you this question and you making this answer: Q. Do you know a Mrs. Olga Frank? A. I rather not answer?

" Do you remember making that answer to that question? A. Yes, sir.

" Q. Now, doctor, will you explain why you could not make that same explanation at that time? "

Despite objection of defendant's counsel, the prosecutor was permitted to elicit from this defendant testimony to the effect that Brinn had, in fact, answered seven routine questions put to him at the police station prior to the one mentioned above. Then the examination continued: " Q. You answered every question that Mr. Goldsmith asked you, two pages, question and answer, until we get to the question, ' Do you know a Mrs. Olga Frank? ' and then you say ' I rather not answer.' "

The assistant district attorney then asked: " Q. Were you asked this question by Mr. Goldsmith and did you make this answer: ' Q. Were you in Dr. Hyman's office last night, Monday? A. I refuse to answer.' Were you asked that question by Mr. Goldsmith and did you make that answer? A. I wouldn't recall that question. I wouldn't recall that answer."

Later in rebuttal, the stenographer who recorded Brinn's interrogatories in the station house was allowed to testify that the doctor, in fact, had refused to answer certain questions.

In his cross-examination of David Hyman, the other defendant, the assistant district attorney was permitted to pursue the same

line of inquiry. This defendant under questioning was compelled to admit that while in custody at the police station he had refused to answer six questions put to him concerning his connection with the alleged crime.

It is obvious that, due no doubt to an excess of zeal, the prosecutor sought to stamp the refusal of the two defendants to answer questions in the station house as admissions of guilt, and to stigmatize as fabrications their testimony concerning these very matters as offered by them upon the trial.

The law is well settled that where a defendant is under arrest he is under no obligation to answer questions, and that his failure to do so creates no inference against him because of his silence or his refusal to reply. (*People* v. *Allen,* 300 N. Y. 222, 225; *People* v. *Mleczko,* 298 N. Y. 153, 160; *People* v. *Rutigliano,* 261 N. Y. 103, 106, 107; *People* v. *Dolce,* 261 N. Y. 108; *People* v. *Smith,* 172 N. Y. 210, 234; *People* v. *Marendi,* 213 N. Y. 600, 613; *People* v. *Luft,* 259 App. Div. 222 [1st Dept.]; *McCarthy* v. *United States,* 25 F. 2d 298.)

In *People* v. *Rutigliano* (*supra,* p. 107), the Court of Appeals in opinion by Chief Judge Pound, made the following pertinent observation: '' No cautious person, when in custody, accused of crime would care to enter into a discussion of his guilt or innocence with his captors and co-defendants, when what he said might be used against him. It cannot be said that ' the declaration was [in such circumstances] in substance a challenge to [him] to assert [his] innocence if [he] were not guilty.' (*Kelley* v. *People* [55 N. Y. 565], *supra,* at p. 573.) He is then under no duty to speak and his silence should not be counted as giving assent to what he hears. If he had counsel, he would doubtless be advised not to talk. If he had not, he should not be prejudiced thereby.''

In *People* v. *Infantino* (224 App. Div. 193, 196-197) the court said: '' Moreover, the witness was, again over objection and exception, permitted to testify as to the many questions asked concerning the assault on Boscarino, and to then state ' no answer.' This seems to have been done on the theory that by standing silent when he might answer, defendant is deemed to admit the charge; that silence means consent. Once in the record, these omissions of defendant to reply to the questions of the police were used with telling effect by the assistant district attorney in his summary to the jury, where, at the close of an intemperate reference to defendant, as portrayed by the Haggerty testimony, he told the jury: ' A very smart thing? If he had been innocent of that crime, he certainly would have told

where he was. Picture any one of you men locked up at six o'clock tonight and asked where you were coming from on your way home from here; decide whether or not you would tell them what had happened.' *In presenting this testimony and so stressing it before the jury the People entirely ignored the fact that being under arrest charged with crime, defendant was under no obligation, legal or otherwise, to answer questions of that kind and that no damaging inference against him can be drawn from either his silence or refusal to reply. (People v. Smith, 172 N. Y. 210, 234; People v. Marendi, 213 id. 600, 613; McCarthy v. U. S., 25 F. [2d] 298.)* The course of trial so adopted was not only prejudicial error but an invasion of his rights that must have been disastrous to any hopes for acquittal he might otherwise have entertained." (Emphasis mine.)

Further, in his cross-examination of defendant Hyman the prosecutor was permitted to ask questions which purported to show that Hyman was a gambler, a card player, and one who made bets on horses. This inquiry had no bearing on his credibility as a witness, nor did it tend in any respect to establish that he had committed the crime with which he was charged. Such testimony adduced over the objection of defendants' counsel was obviously improper. (*People v. Perry,* 277 N. Y. 460, 467; *People v. Buzzi,* 238 N. Y. 390, 402; *People v. Slover,* 232 N. Y. 264, 268; *People v. Richardson,* 222 N. Y. 103, 109.)

In view of these errors, which in the circumstances of this case, we hold were substantial and prejudicial, the judgments of conviction should be reversed and a new trial ordered.

Dore, J. (dissenting). Realizing that the salient facts established in the People's case could not successfully be merely denied, defendants attempted to weave the incontrovertible facts into an explanation that would avoid the inference of a criminal abortion. The jury found defendants' explanation of the facts false and that beyond any reasonable doubt both defendants were guilty of a criminal unnatural abortion.

At trial through the testimony of Dr. Hyman and the claimed opening of defendants' counsel defendants contended that up to trial they never had an opportunity to give the explanation they attempted to give at the trial. In that state of facts, the prosecution could justifiably assail the claim as false by showing that during the investigation of the crime, defendants, when asked, did not give that explanation though they had ample opportunity to do so. The questions now found to be seriously prejudicial

were in the state of facts disclosed competent to impeach defendants' sole defense in their testimony in chief.

The sole question asked by the jury during their deliberations, and answered by the reading of Dr. Hyman's testimony regarding the so-called " therapeutic curettage " indicated clearly that the jury had their minds on the basic facts in the evidence. Their verdict, returned about an hour after the reading of that part of Dr. Hyman's testimony shows that they found the " explanation " factually false.

These defendants were trained and licensed to practice an art whose sole aim is to heal and to save human life. The jury has found them guilty of using their skills, not to heal or preserve but to destroy human life in its most defenseless form: — and they so acted for money, the exorbitant fee of $500 in cash paid by the woman and divided between defendants.

I dissent and vote to affirm.

PECK, P. J., BOTEIN and BERGAN, JJ., concur with COHN, J.; DORE, J., dissents and votes to affirm, in opinion.

Judgments reversed and a new trial ordered.