**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Timothy Alexander MULLINGS,**
**Defendant-Appellant.**

**No. 335, Docket 29976.**

United States Court of Appeals
Second Circuit.

Argued April 14, 1966.

Decided July 7, 1966.

J. Edward Meyer, III, Asst. U. S. Atty., New York City (Robert M. Morgenthau, U. S. Atty., Southern Dist. of New York, Robert G. Morvillo and John E. Sprizzo, Asst. U. S. Attys., New York City, on the brief), for plaintiff-appellee.

Leon B. Polsky, New York City (Anthony F. Marra, New York City, on the brief), for defendant-appellant.

Before LUMBARD, Chief Judge, and WATERMAN and ANDERSON, Circuit Judges.

LUMBARD, Chief Judge:

Timothy Mullings appeals from his conviction entered March 12, 1965 after a trial, without a jury, before Judge Cooper in the Southern District of New York. Indicted for the theft of property worth more than $100 moving in interstate commerce under 18 U.S.C. § 659, and for conspiracy so to steal under 18 U.S.C. § 371, he was acquitted on the conspiracy count and found guilty of the substantive offense. Mullings was sentenced to a term not to exceed three years pursuant to 18 U.S.C. § 4208(a) (2). We reverse the conviction because the court considered inadmissible evidence.

The events leading to the arrest of Mullings, which were sufficient to establish a prima facie case, were set forth in the testimony of the Railway Express security officers and of co-defendant Tollie Matthews, who pleaded guilty to the conspiracy count and testified as part of the government's case. Mullings and Matthews went together to the Railway Express Terminal at 16th Street and Eighth Avenue where they arrived at 2:30 in the morning of January 6, 1965. When they came to a fence in the terminal separating the loading platforms of the Railway Express Agency and the Port Authority, Mullings waited on the Port Authority side. Matthews crossed over to the REA section and shortly afterwards was stopped by a workman while attempting to carry off a carton of shoes. Mullings, who had been observed crouching in a position where he could see through a hole in the fence and then nodding his head as a signal to Matthews, was arrested as he hurried to an exit. Later that morning he was briefly interviewed by an Assistant United States Attorney to whom he made an exculpatory statement, then arraigned before a Commissioner and later taken to the West Street Detention Center where he was interviewed and examined by a medical technician.

The prosecution contended that Mullings was a look-out. The defense argued that he had gone along with Matthews who went to collect a debt from a friend and that Matthews was acting on his own. Mullings did not take the stand and offered no evidence.

Appellant complains that several items of evidence, all duly objected to, should not have been considered: first, that the court should not have given any weight to the fact that Mullings did not offer any explanation to the arresting officers; second, that the Assistant United States Attorney should not have been permitted to testify regarding Mullings' pre-arraignment statements; third, that the government should not have been permitted to introduce evidence impeaching these exculpatory statements of Mullings; and fourth, that the testimony of the medical technician at the prison that Mullings admitted using narcotics should have been excluded. We agree that these items of evidence should not have been considered by the court, and that their admission constituted error requiring reversal of the conviction.

The trial judge should not have given any weight whatever to the fact that, when Mullings was arrested by Arthur Connolly, a Railway Express security officer, Mullings "did not state that he was in the terminal looking for someone." Apparently the judge thought

that Mullings had been asked why he was there; in fact he was not asked. In any event, Mullings was under no duty to say anything and his failure to speak should not have been considered against him. Having been placed under arrest he had the right to remain silent. It is well settled that an inference of guilt may not be drawn from a failure to speak or to explain when a person has been arrested. Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602, 16 L.Ed.2d 694 (June 14, 1966); United States v. Lo Biondo, 135 F.2d 130, 131 (2 Cir. 1943); Ivey v. United States, 344 F.2d 770 (5 Cir. 1965); Helton v. United States, 221 F.2d 338, 341 (5 Cir. 1955).

Were this the only error, we would be disposed to remand for reconsideration without this item of evidence, inasmuch as the case was tried to a judge; but other errors make that course impossible.

■■ When Mullings was brought by an F. B. I. agent to the room of an Assistant United States Attorney just prior to his arraignment, the Assistant first cautioned him before beginning questioning. The Assistant testified [1] that he told Mullings "that he had a constitutional right not to answer any of my questions if he felt that the answers to those questions would in any way incriminate him. I further advised him that anything he would tell me could be used against him in a court of law; and finally I advised him that he had a right to consult with any attorney." Mullings responded that he understood the warning, the Assistant proceeded to question him, and Mullings made several false exculpatory statements.

The caution did not correctly inform Mullings of his rights; he was told not that he had a right to remain silent but only that he need not answer incriminatory questions. As Mullings may well

have chosen to say nothing if he had been advised that he could do so, the government should not have been permitted to make any use of what he did say. The possibly misleading nature of the advice given here distinguishes United States v. Currie, 354 F.2d 163, 165 (2 Cir. 1965), where we held that no fixed formula need be used as long as a suspect was informed of the substance of his rights. Obviously any reasonable doubts on this score must be resolved in favor of the defendant in the light of the opinion of the Chief Justice in Miranda v. Arizona, supra. Thus we cannot accept the contention that Mullings knew his rights and knowingly waived them and therefore that what he said could be used against him.

■ From this it also follows that the three items of evidence introduced to show the falsehood of Mullings' exculpatory statements to the Assistant should not have been admitted for that purpose since they were relevant only if the underlying exculpatory statements were admissible.[2]

■■ But this does not end our inquiry. The government contends that, apart from proving the falsehood of Mullings' statements that he did not use narcotics and earned $150 a week, the testimony that Mullings in fact used narcotics and that his take home pay was under $65 per week was relevant to the motive for his actions at the terminal and therefore properly received. Although a *lack* of money is admissible to show a possible motive for some crimes, 2 Wigmore, Evidence § 392 (3d ed. 1940), in this case the chain of inferences is too speculative. There was no evidence how often Mullings took narcotics, or what the maintenance of such a habit would cost him, or that he was unable to obtain narcotics because of a shortage of money. In effect the evidence only shows that he *might* have lacked money and therefore

1. We think that it is unwise for members of the United States Attorney's staff to testify in cases conducted by other members of the staff, if this can possibly be avoided. See Canon 19, Canons of Professional Ethics.

2. Of course this evidence might have been used to cross-examine Mullings had he taken the stand and testified differently, but that is quite different from permitting its use in the government's direct case.

might have had a motive to commit the crime—from which the judge inferred that he did so. We think this is too remote; the need for money being speculative the motivation can be no better. Whatever probative value this evidence had, it was outweighed by its prejudicial effect. It would place far too much stress on the mere fact of his addiction alone.

■ In view of our conclusion that the evidence that Mullings used narcotics should have been excluded, we are not required to examine the further claim of the appellant that testimony of the medical technician to that effect was a violation of Mullings' constitutional rights. However, as the proffer of such evidence may be made at other trials, under circumstances which would make it relevant, we think we should take this opportunity to point out the impropriety of using evidence gained in such a manner, absent a warning to the defendant regarding his rights before asking him any questions.

Ward H. Bell, the medical technician at the Federal Detention Headquarters, examined Mullings when he was remanded there in default of bail after his arraignment. He testified that he observed needle marks on both arms indicating that Mullings used narcotics, some of which were old and some as recent as a week. He also said that Mul-

lings admitted using narcotics, and the medical record with the signed statement, "I have been using narcotics, HEROIN, IV method, off and on since 1958 except when in custody; my last indulgence was about 8 am this date, January 6, 1965," was admitted.

As Mullings was in custody to answer a charge, the government could not make use of information which it acquired from any statement he made in response to a government official without first advising him of his rights.[3] Massiah v. United States, 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964). The observations by the medical technician regarding the needle marks on Mullings' arm presents a different question, however. The examination was routine and had to do with Mullings' treatment and care at the House of Detention. The observation did not involve any comment, communication or choice by Mullings. Cf. Schmerber v. State of California, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (June 13, 1966). There was nothing counsel could have advised him to do. Apart from the infirmity arising from its relevance on the government's direct case, we can see no objection to its use as there was nothing improper in the manner in which it was obtained.

On the basis of the errors noted above a new trial is necessary. The conviction is reversed.

---

3. Even assuming the medical technician to have physician status, we do not think the physician-patient privilege would prevent the use of the statement either here or after a proper warning, because under Rule 26, Fed.Rules Crim.Proc., the privileges of witnesses are governed by the rules at common law except as modified by statute. As there was no privilege for information given by a patient to a doctor at common law, McCormick, Evidence § 101, and as no federal statute creates one, this statement would be admissible.

We do not wish to imply, however, that any statement made after a proper warning by a doctor would be admissible.

There may be circumstances where, because of the need for medical treatment, such statements may be involuntary under traditional concepts. See Haynes v. State of Washington, 373 U.S. 503, 83 S.Ct. 1336, 10 L.Ed.2d 513 (1963); Culombe v. Connecticut, 367 U.S. 568, 81 S.Ct. 1860, 6 L.Ed.2d 1037 (1961).

The failure to warn, of course, would not prevent the government from using Mullings' statement in cross-examination had he taken the stand and testified that he was not a user. See Walder v. United States, 347 U.S. 62, 74 S.Ct. 354, 98 L.Ed. 503 (1954); United States v. Curry, 358 F.2d 904 (2 Cir. 1966).