UNITED STATES of America ex rel. William PARKER, Petitioner,

v.

Daniel McMANN, Warden, Auburn State Prison, Auburn, New York, Respondent.

No. 68 Civ. 3576.

United States District Court S. D. New York.

Feb. 11, 1969.
Supplemental Memorandums Oct. 2 and 31, 1969.

---

**478**

Jeffrey A. Barist, New York City, for petitioner Parker.

Louis J. Lefkowitz, Atty. Gen., New York City, for respondent; Arlene Silverman, New York City, of counsel.

MEMORANDUM

COOPER, District Judge.

Petitioner, a state prisoner serving a term of five to seven years as a second felony offender, upon his conviction on August 30, 1965 by a jury of grand larceny, first degree, applies to this Court, *pro se*, for a writ of habeas corpus contending that the introduction of certain testimony by the State, in the presence of the jury, violated both his constitutional rights and the law of the State of New York.

On May 6, 1965, Mrs. Ethel Birenbaum, upon entering her apartment building located in the vicinity of 170th Street and College Avenue, Bronx, was grabbed about the neck and shoulders, spun around, and her money demanded by a man she later identified to be the petitioner. A struggle followed during the course of which her assailant was able to acquire possession of her purse and flee into the street (Tr. 17–19).[1] Later that same evening petitioner was apprehended and brought to the 48th Precinct station house where he was arrested and searched by Detective Eugene Goddard (Tr. 65–66). During the trial Goddard testified, on the State's direct case, that at the time he arrested petitioner he conversed with him concerning the events of that evening; the following questions and answers then ensued:

Q. Do you recall what you said to him and what he said to you?

A. Yes, sir. I asked the defendant if he had taken Mrs. Birenbaum's pocketbook and he denied having taken it. As a matter of fact—

Mr. Potter [defense counsel]: I will ask for the exact words used.

Q. Do you recall the exact terms, if you can?

A. He said, "I didn't do it, I didn't take the pocketbook."

Q. Go on. A. He said that he had never seen Mrs. Birenbaum before. I asked him where he had been

---

1. "Tr." followed by a number refers to pages of the transcript of the State trial.

that evening and he said he was at 169th Street and Morris Avenue.

Q. Did you ask him what he was doing there?

A. Yes, sir. First he told me he went into the building to visit a friend.

Q. *Did you ask him the address?* A. *I did.*

Q. *What was his response?* A. *He did not give me the number of the building.*

Q. *Did you ask him the name of the friend?*

A. *I did.*

Q. *What was his response?*

A. *He didn't give me a name.*

Q. Did you have any further conversation with him? A. Yes, sir. Later on I asked him if this money was his, if the $63 belonged to him and he said he had gotten paid a couple of days before that from his job. I asked him where he worked. However, I can't recall now what he told me, what his answer was.

Q. Did you ask the defendant where he lived?

A. Yes, sir, I did.

Q. Do you recall what he said to that?

A. 961 Fox Street.

Q. Is that in the Bronx?

A. Yes, sir.

Q. Can you tell me how far 961 Fox Street is from College Avenue and 170th Street?

A. I'd say approximately two and a half to three miles (Tr. 66–67). (Emphasis added.)

Petitioner now asserts, as he did previously on direct appeal from his conviction,[2] that Goddard's testimony that he failed to respond to certain questions concerning his whereabouts on the evening of the crime violated his constitutional right to remain silent as well as New York State law.[3] He contends that "the prosecution was using [his] failure to reply to these questions as evidence of [his] guilt," and urges that this Court not overlook "[t]he probability that the jury misconstrued [his] silence and took it to be an admission that he was implicated in the crime in some way."

In an attempt to rebut petitioner's constitutional claim, the State argues that the holding of Griffin v. State of California[4] is factually inapplicable; further, even if the reasoning of *Griffin* is applicable to these facts, petitioner's constitutional rights were not violated since *"the detective's testimony was not introduced in such a manner as to inculcate in the minds of the jury an impression that the refusal to answer was tantamount to admission of guilt"* and *"no comment was made by the prosecutor upon petitioner's silence."* (State's Affidavit In Opposition, verified October 22, 1968, pp. 5–6.) We supply the em-

---

2. The Appellate Division of the Supreme Court, First Department, affirmed the judgment of conviction without opinion on January 19, 1967. People v. Parker, 27 A.D.2d 705, 279 N.Y.S.2d 713. Leave to appeal to the New York Court of Appeals was denied on March 10, 1967.

3. While Goddard's testimony that "[h]e did not give me the number of the building" and "[h]e didn't give me a name" does not necessarily mean that petitioner was silent or failed to respond at all, we assume this to be the case in light of the record as it exists before us. Petitioner asserts that he was silent and the State has never contended otherwise. Additionally,

in its affidavit to this Court and in its brief on appeal to the Appellate Division, the State conceded that petitioner remained silent when questioned as to the name and address of the friend he was allegedly visiting.

4. 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed. 2d 106 (1965). In *Griffin*, the Supreme Court held that "the Fifth Amendment * * * forbids either comment by the prosecution on the accused's silence [in either a federal or state proceeding] or instructions by the court that such silence is evidence of guilt." *Id.* at 615, 85 S.Ct. at 1233.

phasis for reasons which will become apparent hereinafter.

Factually *Griffin* is distinguishable since no comment was made by the prosecution on petitioner's failure to testify. Yet, that is not to say that petitioner has presented no claim of constitutional dimension. Suffice it to say at this point that the Supreme Court in Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), held that "it is impermissible to penalize an individual for exercising his Fifth Amendment privilege when he is under police custodial interrogation. The prosecution may not, therefore, use at trial the fact that he stood mute or claimed his privilege in the face of accusation." *Id.* at 468 n. 37, 86 S.Ct. at 1625. The applicability of *Miranda* is an issue we discuss later.

### Vital portions of trial transcript not before mentioned

In our study of the complete trial record consisting of 166 pages, as is our plain duty in an application such as the one before us especially when presented *pro se,* we came upon certain portions thereof unmentioned at any stage of the entire proceedings heretofore had herein, including the instant petition, which we regard as bearing significantly on petitioner's grievance. We raise no hopes nor indulge in criticism; we earnestly seek further enlightment on the crucial issue before us—not whether the petitioner was guilty as charged, but whether he received, as was his due, a constitutionally fair trial under law.

Accordingly, of more immediate concern to this Court is the State's allegation that "no comment was made by the prosecutor upon petitioner's silence." A thorough reading of the record reveals the State's allegation to be incorrect, for the record contains several instances where both the prosecutor and Judge presiding, during the summation and charge respectively, made reference to petitioner's failure to respond to Detective Goddard's questions.

During the course of his summation, the prosecutor, focusing on Goddard's testimony, stated:

The cogent point of the testimony, the important facet, was when this defendant was questioned, what were you doing in the neighborhood, you live over at Fox Street, two and a half miles away? People are entitled to go wherever they want, but what were you doing there? That is a legitimate question. After all the circumstances that have taken place, what were you doing there?

I went to visit a friend.

Where does the friend live?

Well, I don't know the address.

That is even legitimate too. People may not know the address. They can know the building. What is the name of the friend?

I don't know. I don't know. This is an answer (Tr. 121–122).

At a later point in his summation, the prosecutor again made reference to petitioner's silence:

\* \* \* and then the statement made by this defendant to Detective Goddard that he was visiting somebody at an address he didn't know and people he couldn't give the name of.

Doesn't this connote an element of a lie? Why would he want to lie about it? He knew if he had given the name of a person the detective could very easily check up on it and if it proved correct, he could walk out a free person, but he was caught in his own lie.

He didn't think fast enough or he didn't think correctly enough, and he lied (Tr. 131).

The Judge, in the course of his summary of the testimony in the case, also referred to petitioner's silence:

Defendant stated he was in building to visit friend. Didn't know the number of the building or name of the friend (Tr. 150).

And a few sentences later, the Judge observed:

> Defendant stated he came out of building to visit a friend. He did not know number of building or name of friend (Tr. 150).

We note that while the preceding remarks had reference to petitioner's failure to respond when questioned by the police, neither Judge nor prosecutor mentioned that fact in commenting to the jury. Clearly, both apparently construed petitioner's silence as an admission that he "didn't know" or "couldn't give" the name or address of the friend he was allegedly visiting and both so informed the jury.

Despite the fact that petitioner's papers are silent as to the comments quoted above by Judge and prosecutor, most certainly we feel obliged to consider them in ruling on his *pro se* application since they are *directly related* to the constitutional claim asserted.

*Proceedings in State Appellate Courts*

In an effort to determine whether the State appellate court considered the comments of Judge and prosecutor quoted above when ruling on petitioner's direct appeal, we requested and received from the State Attorney General's Office copies of all briefs submitted to the Appellate Division.

Since the Appellate Division affirmed without opinion, we can not be positive it gave any consideration whatever to these trial transcript extracts. Moreover, a thorough analysis of these briefs leads this Court to believe that there exists a strong possibility that the quoted remarks by Judge and prosecutor were not considered by it, for neither petitioner's nor State's appellate brief made mention of these comments; nor did any of the other issues there raised refer in any way to any portion of the summation or charge. Additionally, as revealed by the excerpts from its brief set out in the margin,[5] the State may have indirectly implied that Goddard's testimony was the only reference in the trial record to petitioner's failure to respond and thereby innocently misled the appellate court.

As to the proceedings before the New York Court of Appeals, our inquiry disclosed that the State's highest appellate court had no additional papers before it other than the briefs previously noted when it denied petitioner leave to appeal.

Thus, while we feel obliged to consider the aforementioned comments of Judge and prosecutor in ruling on petitioner's application, we are far from satisfied that they entered into the State appellate courts' deliberations.

Initially, therefore, we must resolve whether in the interest of comity we should afford the State another opportunity to consider petitioner's claim. Involved in this determination is the question of whether State corrective process is presently available to petitioner.

In the light of our discovery, particularly because it has not been dealt with by State or petitioner, and since neither have considered the issue of comity or other vital issues soon to be detailed, we have decided, in the interest of fairness to both parties, to allow the filing of supplemental briefs. To ensure that petitioner is afforded adequate opportunity to present his side of each issue, we are assigning Robert Klonsky, Esq., 66 Court St., Brooklyn, N.Y. to represent him.[6]

---

5. "Obviously, that testimony alone could not serve to incriminate defendant. * * *" (Respondent's Brief, pp. 8–9.) "Moreover, the reception of evidence violative of the *Rutigliano* rule of exclusion is to be overlooked unless introduced in such a manner as to inculcate upon the minds of the jury an impression that the refusals to answer were tantamount to admissions of guilt. [citation omitted.] In the instant case the refusals to respond, standing alone, were absolutely insignificant." (Respondent's Brief, pp. 9–10.)

6. Petitioner is indigent and has requested that counsel be appointed to represent him. (Petitioner's Affidavit in Forma Pauperis.)

### No Inference From Silence

Before discussing the issues which we consider determinative of petitioner's application, it is appropriate to briefly set forth the relevant State and Federal law in this area.

It is well settled in New York that "a person in custody accused of a crime is under no duty to speak and that his silence should not be counted as giving assent." People v. Pignataro, 263 N.Y. 229, 236, 188 N.E. 722 (1934); People v. Petersen, 4 N.Y.2d 992, 177 N.Y.S.2d 510, 152 N.E.2d 532 (1958); People v. Travato, 309 N.Y. 382, 131 N.E.2d 557 (1955); People v. Abel, 298 N.Y. 333, 83 N.E.2d 542 (1949); People v. Rutigliano, 261 N.Y. 103, 184 N.E. 689 (1933); People v. Taylor, 284 A.D. 1017, 134 N.Y.S.2d 740 (1954). Since a defendant is under no obligation to answer, his silence or refusal to reply creates no inference against him. See People v. Hyman, 284 A.D. 347, 131 N.Y.S.2d 691 (1954), aff'd, 308 N.Y. 794, 125 N.E.2d 597 (1955); People v. Marendi, 213 N.Y. 600, 107 N.E. 1058 (1915). Accordingly, "evidence may not be introduced to show that the defendant refused to answer questions by prosecuting officials." People v. Lee, 4 A.D.2d 770, 165 N.Y.S.2d 338, 341 (1957), aff'd, 4 N.Y.2d 843, 173 N.Y.S.2d 815, 150 N.E.2d 241 (1958); see People v. Luft, 259 A.D. 222, 18 N.Y.S.2d 880 (1940). While it is error to admit testimony as to the defendant's silence or refusal to respond, such error may not always require reversal of the conviction. See People v. Bianculli, 9 N.Y.2d 468, 215 N.Y.S.2d 33, 174 N.E.2d 717 (1961); People v. DeRuggiero, 24 A.D.2d 901, 264 N.Y.S.2d 778 (1965).

In People v. Travato, supra, a case illustrative of the principle that silence may not be used as inferential evidence of guilt, the Court of Appeals reversed the conviction of a defendant apprehended with stolen sewing machines in his automobile, with his shirt and trousers bearing traces of oil, grease and lint tending to connect him with the commission of the crime, because of testimony that "repeatedly defendant refused to answer where he got this oil and grease upon his hands and clothing." Id. 309 N.Y. at 386, 131 N.E.2d at 559. The court noted that the reception of this evidence was aggravated rather than corrected by the language of the Judge's charge which appeared to imply that these refusals to talk might be regarded as evidence of guilt.[7]

Similarly, in People v. Infantino, 224 A.D. 193, 230 N.Y.S. 66 (1928), the court found error in the admission of testimony that defendant remained silent when questioned about the assault on another. There the court noted that the "omissions of defendant to reply to the questions of the police were used with telling effect by the assistant district attorney in his summary to the jury * * *."[8] Id. at 70. In reversing the defendant's conviction, the court stated:

> In presenting this testimony, and so stressing it before the jury, the people entirely ignored the fact that, being under arrest, charged with crime, defendant was under no obligation, legal or otherwise, to answer questions of that kind, and that no damaging inference against him can be drawn from either his silence or refusal to reply. Id. at 70.

7. The jury was told: "And you will recall, if it agrees with your recollection, that he [Police Officer Ford asked the defendant when he was questioning the defendant, how he got his clothes greasy and oily, and the defendant refused to answer." People v. Travato, 309 N.Y. at 386, 131 N.E. at 559.

8. The prosecutor argued to the jury as follows: "A very smart thing? If he

had been innocent of that crime, he certainly could have told where he was. Picture anyone of you men locked up at 6 o'clock to-night and asked where you were coming from on your way home from here; decide whether or not you would tell them what had happened." People v. Infantino, 230 N.Y.S. at 70.

Assuming the introduction of Goddard's testimony accompanied by the comments of the Judge and prosecutor constituted a violation of New York State law, we are still faced with the point that petitioner would not be entitled to the relief he seeks from this Court unless such conduct was also violative of the Constitution of the United States.

■ After *Miranda,* it is unmistakably clear that the "use at trial [of] the fact that [the defendant] stood mute or claimed his privilege in the face of accusation,"[9] when he was under police custodial interrogation, constitutes a violation of the Fifth Amendment whose strictures in this respect are equally applicable to the States. 384 U.S. at 468 n. 37, 86 S.Ct. at 1625; Malloy v. Hogan, 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed.2d 653 (1964). "When a defendant's exercise of his constitutional right to remain silent during * * * interrogation * * * is the subject of testimony or comment, the possibility that the jury might draw prejudicial inferences therefrom is the penalty [for exercising a constitutional privilege] to which he is exposed." United States v. Nielsen, 392 F.2d 849, 852 (7th Cir.1968); see United States v. Mullings, 364 F.2d 173 (2d Cir.1966).

Even prior to *Miranda,* it had been held in this circuit, as well as others, that one under arrest or in custody, charged with crime, was under no duty to speak and that his failure to do so was not to be considered against him. See United States v. LoBiondo, 135 F.2d 130 (2d Cir.1943); Ivey v. United States, 344 F.2d 770 (5th Cir.1965); Helton v. United States, 221 F.2d 338 (5th Cir.1955); Yep v. United States, 83 F.2d 41 (10th Cir.1936); McCarthy v. United States, 25 F.2d 298 (6th Cir. 1928).

We are satisfied that, as the law now exists, the introduction of Goddard's testimony and the comments by the Judge and prosecutor thereon would violate petitioner's constitutional right to remain silent by imposing a penalty on the exercise of that privilege. Putting to one side the issues of waiver which we will discuss later, had petitioner been tried after *Miranda,* we believe he would be entitled to the relief he presently seeks. Petitioner, however, was tried and convicted prior to *Miranda* and therefore is entitled to the protection of the constitutional right he asserts only if that right existed prior to *Miranda,* or if the holding of *Miranda,* enunciated in footnote 37, is applicable to cases pending on direct appeal on June 13, 1966 (the date of the Miranda decision), as was petitioner's.[10] These "ifs" are two of the issues to which this Court desires the parties to direct themselves.

*Issues to be Resolved*

In an attempt to be of some aid to both parties, this Court, in the succeeding pages of this memorandum, will briefly set forth the results of its own preliminary research into these and other issues.

The first, as we see it, is whether the testimony of Goddard and the comments by Judge and prosecutor on petitioner's silence constituted a violation of the Fifth Amendment prior to *Miranda.* This, in part, would appear to depend upon whether or not an accused had a constitutionally protected right to remain silent at the time of arrest prior to *Miranda.* See Escobedo v. Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964); Fagundes v. United States, 340 F.2d 673 (1st Cir.1965); Developments in the Law of Confessions, 79 Harv.L. Rev. 935, 1043.

9. It should be noted that "[a]ny evidence to the effect that a defendant in custody remained silent is inadmissible where such evidence tends to penalize the defendant for having exercised his right to remain silent, *whether such silence is in the face of a specific accusation or not.*" Galas-

so v. State of Florida, 207 So.2d 45, 48 (Fla.Dist.Ct.App.1968) (emphasis supplied). See United States v. Mullings, 364 F.2d 173 (2d Cir. 1966).

10. Petitioner's appeal was not decided until January 19, 1967.

In Malloy v. Hogan, *supra*, the Supreme Court held that "the Fourteenth Amendment secures against state invasion the same privilege that the Fifth Amendment guarantees against federal infringement—the right of a person to remain silent unless he chooses to speak in the unfettered exercise of his own will, and to suffer no penalty * * * for such silence." *Id.* 378 U.S. at 8, 84 S.Ct. at 1493. It was not until Griffin v. State of California, *supra*, however, that the Supreme Court explicated the proscription against adverse comment on the defendant's silence at trial. See Tehan v. United States ex rel. Shott, 382 U.S. 406, 86 S.Ct. 459, 15 L.Ed.2d 453 (1966). One might well argue that the relationship between *Malloy* and *Miranda* is analogous to the relationship between *Malloy* and *Griffin,* and that the ruling prohibiting the use of a defendant's silence at the time of arrest was not explicated until *Miranda*. See Commonwealth ex rel. Staino v. Cavell, 428 Pa. 365, 228 A.2d 647 (1967); Commonwealth v. Dravecz, 424 Pa. 582, 227 A.2d 904, 909 (1967) (Eagen, J., concurring). On the other hand, one court has reasoned that the distance between a prosecutor's comment on an accused's failure to testify at trial and his comment upon an accused's failure to make an exculpatory statement upon arrest is "infinitesimal." Gillison v. United States, 130 U.S.App.D.C. 215, 399 F.2d 586, 587 (1968); see United States ex rel. Smith v. Brierly, 267 F.Supp. 274 (E.D.Pa. 1967), aff'd, 384 F.2d 992 (3rd Cir. 1967); United States ex rel. Romano v. Fay, 360 F.2d 389, 392 n.2 (2d Cir. 1966).

To further complicate matters, we note that a number of courts, prior to the decision in *Miranda,* excluded evidence of silence obtained while the accused was under arrest on the ground that it violated the Fifth Amendment. See Ivey v. United States, 344 F.2d 770 (5th Cir.1965); Helton v. United States, 221 F.2d 338 (5th Cir.1955); Cf. Fagundes v. United States, 340 F.2d 673 (1st Cir.1965); McCarthy v. United States, 25 F.2d 298 (6th Cir.1928).

*[Applicability of Miranda]*

Assuming *arguendo*, that the constitutional proscription against the use of a defendant's silence at the time of arrest had its origin in footnote 37 of the Miranda decision, there remains for consideration the other issue whether that *holding should affect cases pending on direct appeal when it was rendered.* See Tehan v. United States ex rel. Shott, *supra* 382 U.S. at 409 n. 3, 86 S.Ct. at (1966); Linkletter v. Walker, 381 U.S. 618, 622 and n.4, 85 S.Ct. 1731, 14 L. Ed.2d 601 (1965). The obvious first question: Does the Supreme Court's decision in Johnson v. State of New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L. Ed.2d 882 (1966), preclude this Court from even considering whether the holding of footnote 37 should be held applicable to case still pending on direct review at the time it was announced?

The Ninth Circuit, in a brief per curiam opinion, found *Johnson* applicable and held that footnote 37 was not retroactive. Wilson v. Madigan, 9 Cir., 389 F.2d 97 (1968). A number of State courts have similarly so held. People v. Turner, 91 Ill.App.2d 436, 235 N.E.2d 317, 321 (1968); State v. Rice, 37 Wis. 2d 392, 155 N.W.2d 116, 119 (1968); People v. Gisondi, 9 Mich.App. 289, 156 N.W.2d 601, 604 (1957); Galloway v. State, 32 Wis.2d 414, 145 N.W.2d 761, 766 (1967).

In contrast, the Supreme Court of Pennsylvania, starting with the premise that *Johnson* left "open the question of the retroactivity of this particular aspect of the Miranda decision * * *," concluded that, while the holding of footnote 37 should not be given full retroactive effect, it should be applied to cases pending on direct review when *Miranda* was decided. Commonwealth ex rel. Shadd v. Myers, 423 Pa. 82, 223 A. 2d 296, 302 (1966); Commonwealth ex rel. Staino v. Cavell, 428 Pa. 365, 228 A. 2d 647 (1967); Commonwealth v. Dravecz, 424 Pa. 582, 227 A.2d 904, 909

(1967) (Eagen, J., concurring); Cf. Commonwealth v. Jefferson, 430 Pa. 532, 243 A.2d 412 (1968). Compare 52 Cornell L.Q. 335, 340 n.39. The court's conclusion was based on an analogy to the kindred decisions of *Griffin* and *Tehan.*

### [*Waiver*]

Two other issues, both involving questions of waiver, warrant attention. The first arises from the fact that no objection was made to the introduction of Goddard's testimony.[10] Petitioner contends that such omission is not fatal since a constitutional right cannot be waived by the mere failure to make a timely objection. In addition, he notes the power of the New York appellate court to entertain the question on the merits without previous exception having been taken. N.Y.Code of Crim.Proc. § 527. See United States ex rel. Vanderhorst v. LaVallee, 285 F.Supp. 233, 243 (S.D.N.Y.1968). The State has not as yet indicated its position on this issue.

The other issue of waiver stems from the fact that petitioner did respond to a number of the questions put to him by Detective Goddard. The State argues that "petitioner himself opened the way to the inquiry by the detective of which he now complains. * * *" (State's Affidavit In Opposition, verified October 22, 1968, p. 6). This waiver argument appears to find some support in Vitali v. United States, 383 F.2d 121, 123 (1st Cir.1967). We question, however, whether such reasoning can stand in light of the statement by the Supreme Court that "where in-custody interrogation is involved, there is no room for the contention that the privilege is waived if the individual answers some questions or gives some information on his own prior to invoking his right to remain silent when interrogated." Miranda v. State of Arizona, 384 U.S. at 475–76, 86 S.Ct. at 1628.

### Conclusion

We trust that the preceding discussion will prove of some aid to the parties. One word of caution is in order: that discussion is merely an attempt by this Court to give the parties the benefit of its own preliminary research on each issue; neither party should construe any statement appearing therein as an indication that this Court has decided the issue under discussion. By confessing the complexity of issues yet unresolved, we should not be penalized by the parties' expectation of hope or approval. They are free to raise and discuss any other issues which they deem relevant to the disposition of the instant application.

The parties shall have 45 days in which to file and serve their supplemental briefs. Thereafter an additional 15 days is afforded for the filing and serving of reply briefs.

## SUPPLEMENTAL MEMORANDUM

The instant application for a writ of habeas corpus has already been the subject of a fairly lengthy memorandum by this Court (filed February 11, 1969). Therein we discussed, without resolving, the constitutional issues (not previously considered by either State or petitioner) controlling determination of this application. In the interest of fairness to both parties, we allowed the filing of supplemental memoranda addressed to these issues, and assigned counsel to represent petitioner.[1] On July 11, 1969, both the State and petitioner filed memoranda. At the request of petitioner's

---

10. Defense counsel, at the end of the prosecutor's summation, did request the court to charge "that the statements made by the defendant that there is no testimony on the record to show that what he told is a lie are not statements against his interest and are not admissions and are not confessions." The Court refused the request. (Tr. 134–135.)

1. Jeffrey A. Barist, Esq. took over petitioner's representation from Robert Klonsky, Esq. originally assigned on May 27, 1969. To both we express our sense of appreciation for the alacrity of their response to a call for assistance and the painstaking efforts they expended.

assigned counsel, oral argument on the merits was held on September 3, 1969.

### The Pertinent Testimony

The testimony objected to by petitioner was elicited during the direct examination of Detective Eugene Goddard, the arresting officer. Goddard had testified that he conversed with petitioner at the time of his arrest; the following questions and answers were then elicited:

Q. Do you recall what you said to him and what he said to you?

A. Yes, sir. I asked the defendant if he had taken Mrs. Birenbaum's pocketbook and he denied having taken it. As a matter of fact—

Mr. Potter [defense counsel]: I will ask for the exact words used.

Q. Do you recall the exact terms, if you can?

A. He said, "I didn't do it, I didn't take the pocketbook."

Q. Go on. A. He said that he had never seen Mrs. Birenbaum before. I asked him where he had been that evening and he said he was at 169th Street and Morris Avenue.

Q. Did you ask him what he was doing there?

A. Yes, sir. First he told me he went into the building to visit a friend.

Q. *Did you ask him the address?* A. *I did.*

Q. *What was his response?* A. *He did not give me the number of the building.*

Q. *Did you ask him the name of the friend?*

A. *I did.*

Q. *What was his response?*

A. *He didn't give me a name.*

Q. Did you have any further conversation with him? A. Yes, sir. Later on I asked him if this money was his, if the $63 belonged to him and he said he had gotten paid a cou-

ple of days before that from his job. I asked him where he worked. However, I can't recall now what he told me, what his answer was.

Q. Did you ask the defendant where he lived?

A. Yes, sir, I did.

Q. Do you recall what he said to that?

A. 961 Fox Street.

Q. Is that in the Bronx?

A. Yes, sir.

Q. Can you tell me how far 961 Fox Street is from College Avenue and 170th Street?

A. I'd say approximately two and a half to three miles. (Tr. 66–67.)[2] (Emphasis added.)

Petitioner contends that "the State was using [his] failure to reply to these questions as evidence of his guilt."

Since oral argument, we have reread many times the vital testimony hereinabove set out and upon which petitioner heavily relies. On its face we are not convinced that he remained silent when asked the highly pertinent questions put by Goddard. Without more, we would be inclined to deny the writ. What gives us pause appears below.

### The State's Differing Interpretations

As already noted in our memorandum of February 11, 1969, Goddard's testimony was far from unambiguous:

While Goddard's testimony that "[h]e did not give me the number of the building" and "[h]e didn't give me a name" does not necessarily mean that petitioner was silent or failed to respond at all, we assume this to be the case in light of the record as it exists before us. Petitioner asserts that he was silent and the State has never contended otherwise. Additionally, in its affidavit to this Court and in its brief on appeal to the Appellate Division, the State conceded that petitioner remained silent when questioned as to the name and address of the friend

---

**2.** "Tr." followed by a number refers to pages of the transcript of the State trial.

he was allegedly visiting. (Memorandum, p. 5 n.3.)

Supporting this conclusion, we point out that in the State's Affidavit In Opposition to the present application (verified October 22, 1968) the following appears:

When asked the address and name of his friend, he failed to respond. (p. 3) * * *

On the record as a whole it is apparent that there was ample evidence to convict the petitioner notwithstanding any inference of guilt which may have been drawn from his failure to reply to the detectives questions. * * *

It was only when the police sought certain details concerning his story, in an apparent effort to corroborate his alibi and free him from suspicion, that the petitioner remained silent. (p. 6).

And the State's brief on appeal to the Appellate Division, Supreme Court, First Department, states:

When, however, the police sought certain details concerning the story he had just related, in an apparent effort to corroborate his alibi, defendant remained silent. (p. 9) * * *

In the instant case the refusal to respond, standing alone, were absolutely insignificant. * * *

An objection, however, merely to the testimony concerning his silence, would not have been well taken. * * * (p. 10).

The State now contends that petitioner was not in fact silent. The Deputy Assistant Attorney General, conceding carelessness at the time of oral argument, asserts:

[u]ndoubtedly, he [petitioner] answered, but in an unresponsive or uninformative way. * * *

Since the petitioner was freely volunteering information all along, it is unlikely that he stood mute when the detective asked him the name and address of his friend. * * * (Memorandum In Opposition To Petitioner's Application For A Writ of Habeas Corpus, dated July 11, 1969, p. 11.)

Coments by Judge and Prosecutor

In our memorandum aforementioned we also called attention to the fact that vital portions of the trial transcript directly relating to petitioner's constitutional claim had apparently gone unmentioned and possibly unnoticed in all prior proceedings. Those portions contained comments by both the Judge and prosecutor concerning Goddard's testimony.

During the course of his summation, the prosecutor, focusing on Goddard's testimony, said:

The cogent point of the testimony, the important facet, was when this defendant was questioned, what were you doing in the neighborhood, you live over at Fox Street, two and a half miles away? People are entitled to go wherever they want, but what were you doing there? That is a legitimate question. After all the circumstances that have taken place, what were you doing there?

I went to visit a friend.

Where does the friend live?

Well, I don't know the address.

That is even legitimate too. People may not know the address. They, can know the building. What is the name of the friend?

I don't know. I don't know. This is an answer. (Tr. 121–122.)

* * * * * *

* * * and then the statement made by this defendant to Detective Goddard that he was visiting somebody at an address he didn't know and people he couldn't give the name of.

Doesn't this connote an element of a lie? Why would he want to lie about it? He knew if he had given the name of a person the detective could very easily check up on it and if it proved correct, he could walk out a free person, but he was caught in his own lie.

He didn't think fast enough or he didn't think correctly enough, and he lied. (Tr. 131.)

The Judge, in the course of his summary of the testimony in the case (quite clearly referring to his written notes of the trial), told the jury:

Defendant stated he was in building to visit friend. Didn't know the number of the building or name of the friend. (Tr. 150.)

\*　　\*　　\*　　\*　　\*　　\*

Defendant stated he came out of building to visit a friend. He did not know number of building or name of friend. (Tr. 150.)

Proceeding *on the assumption* that petitioner was silent, we noted in our memorandum that

[w]hile the preceding remarks [of Judge and prosecutor] had reference to petitioner's failure to respond when questioned by the police, neither Judge nor prosecutor mentioned that fact in commenting to the jury. Clearly, both apparently construed petitioner's silence as an admission that he "didn't know" or "couldn't give" the name or address of the friend he was allegedly visiting and both so informed the jury. (Memorandum, pp. 10–11.)

The State's present position on this phase appears in its Memorandum In Opposition To Petitioner's Application For a Writ Of Habeas Corpus, dated July 11, 1969, pp. 11–12. The aforementioned comments of Judge and prosecutor reveal that they viewed the "detective's testimony as indicating that petitioner responded"; and the lack of objection by defense counsel shows that he too "took the detective's testimony as indicating that the petitioner had answered the questions addressed to him."

### Conclusion

These conflicts force us into an uncertain position as to the issue of petitioner's silence. Its resolution will enable us to proceed with certainty. Accordingly, we order an evidentiary hearing into this matter, the date thereof to be set by this Court in the near future.

So ordered:

### SUPPLEMENTAL MEMORANDUM

On October 2, 1969 we ordered an evidentiary hearing be held to determine whether or not petitioner, as he claimed, had either remained silent or in some way sought to exercise his Fifth Amendment privilege against self-incrimination with respect to two of many questions put to him by Detective Goddard following his arrest.[1]

We noted then that the record of his trial standing alone failed to support his contention; rather, it tended toward the conclusion that he had responded, but in an unresponsive or uninformative manner. What gave us pause and prompted this evidentiary hearing was the consistent assumption by the State, until its Memorandum In Opposition to Petitioner's Application for a Writ of Habeas Corpus, dated July 11, 1969, pp. 11–12, that petitioner had remained silent as he claimed.

 On October 23 and 24, 1969 the evidentiary hearing was held. After a painstaking review of the evidence in which we paid close attention not merely to the words spoken under oath by the witnesses presented but to their demeanor and credibility, and upon a careful assessment of the conviction which accompanied the testimony proferred, we are constrained to and do find a failure of proof establishing, by a preponderance of the credible evidence, that petitioner did not respond to the two questions put to him by Detective Goddard or that he sought to exercise his Fifth Amendment privilege. See Johnson v. Zerbst, 304 U.S. 458, 468–469, 58 S.Ct. 1019, 82 L. Ed. 1461 (1938); Tyler v. Beto, 391 F. 2d 933 (5th Cir.1968); Bolton v. Harris, 130 U.S.App.D.C. 1, 395 F.2d 642

---

1. For a more complete background and history of this case, see our Memorandum decisions dated February 11, 1969 and October 2, 1969.

(1968); Via v. Peyton, 284 F.Supp. 961 (D.Va.1968); Morris v. Peyton, 283 F. Supp. 63 (D.Va.1968). Put succinctly, the evidence in petitioner's behalf was not convincing.

Accordingly, petitioner having failed to establish a necessary element to any claim of constitutional error, his application for a writ of habeas corpus must be and is denied.

So ordered: