**In re Daniel Leon LUALLEN.**
**Civ. A. No. 7031.**

United States District Court,
E. D. Tennessee, N. D.

Sept. 18, 1970.

Daniel Leon Luallen, in pro. per.

Lance D. Evans, Asst. Atty. Gen., Nashville, Tenn., for respondent.

## MEMORANDUM

ROBERT L. TAYLOR, District Judge.

Daniel Luallen, sometimes referred to as petitioner, who is confined in the state penitentiary at Nashville pursuant to a conviction for first degree murder, has filed his second habeas corpus petition in this Court. The initial petition was transferred from the Middle District of Tennessee pursuant to 28 U.S.C. § 2241 and denied for failure to exhaust available state remedies. Luallen v. Henderson, Civil Action No. 6046, September 5, 1967. Petitioner has subsequently been denied relief in the state courts and has exhausted available state remedies.[1]

Luallen was indicted with two others for the first degree murder of a prominent contractor in rural Roane County on March 21, 1950. Under the State's theory, the three were resisted by the contractor during a robbery attempt. In the resulting gunplay, the contractor was wounded and died almost immediately, Luallen was wounded and he and his accomplices fled to their homes in Knoxville. Luallen was shortly thereafter admitted to a Knoxville hospital and subsequently arrested at the hospital. Upon his release by the hospital, petitioner was delivered into the custody of

---

1. This Court is unable to find consideration by the state court of questions relating to denial of counsel and self-incrimination made by petitioner. The Court notes a similar assignment of error in the post-conviction proceeding and the statement on petition to rehear that: "We fully considered all of the petitioner's constitutional questions in the original opinion of the Court, to which we adhere." Luallen v. State, 453 S.W.2d 453, 459 (Tenn.Crim.App.1969) cert. den. Tenn.Supreme Court, April 6, 1970.

the Sheriff of Roane County. On cross-examination, Sheriff Stinecipher testified that "Luallen said on the way from Knoxville he didn't care to make any statement until he saw his attorney. And up to this day he has never made a statement." (Petitioner did not testify at the state post-conviction proceeding.) According to the Sheriff, about a week or ten days after Luallen had been released from the hospital, Rudder, the confessed accomplice, was brought to the jail. There before Luallen, the co-defendant Sands, the Sheriff and three other persons, Rudder related his confession which clearly implicated Sands and Luallen. The Sheriff testified that Luallen remained absolutely silent. These facts were developed after petitioner's counsel interposed the following objection:

"MR. HANNAH: If the court, please, the defendant Luallen objects to any repetition of any statement made by Eddie Rudder at the Kingston jail in the presence of Luallen, for the reason that the defendant Luallen was sick, had a recent appendix operation and gun shot wound, absence of his attorney, in the custody of officers, helpless like a lamb before the shearing and told the sheriff he would make no statement unless he had his attorney, and that the statement made here in his presence in this county jail was in violation of his rights under the statute, and under the constitution to be represented by counsel, and to come now and recite that again and attempt to hold that against him as a confession or admission is in violation of his rights as a citizen under the law and constitution of the State. The man was under every handicap, sick mentally and sick physically."

The trial court ruled any statement made by Rudder admissible and allowed the Sheriff to relate those statements. Counsel for Luallen while expressly reserving his exception allowed the Sheriff to condense Rudder's statements. This evidence supplied by the Sheriff was more or less cumulative to that of Rudder.

Neither defendant testified. The trial court charged the jury that no inference could be taken from the defendants' failure to testify. Subsequently, he charged:

## "INFERENCE OF GUILTY.

"When a statement is made in the presence and hearing of one accused of an offense and the statement tends to incriminate him, or is of an incriminating character, and the statement is not denied or objected to by the accused, both the statement and the fact of his failure to deny it or make any response to it is admissible against the accused as evidence of his acquiesence in its truth. And our Supreme Court has said that where a defendant fails to deny or to object to such statement that it is to be taken by the jury as an inference of his guilt."

█ Petitioner contends that he was denied the assistance of counsel at a critical stage of the proceedings; that the violation of this right is retroactive, Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963) and that he should be granted a new trial for the violation of his Sixth Amendment right. The Court is of the opinion that this pre-trial investigation proceeding was not a critical stage in the criminal proceeding within the context of Gideon. See Coleman v. Alabama, 399 U.S. 1, 7, 90 S.Ct. 1999, 26 L.Ed.2d 387 (1970). The proceeding conducted by the Roane County Sheriff was in the nature of a pre-trial custodial interrogation. There was no right to the assistance of counsel at such a proceeding in 1950. Johnson v. New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966).

Petitioner contends that the Sheriff's testimony concerning his silence when confronted with Rudder's accusation and the charge of the trial court that instructed the jury that his failure to deny the accusation could be taken as an inference of guilt violated rights pro-

tected by the Fifth Amendment and made applicable to the state by Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964) and Malloy v. Hogan, 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed. 2d 653 (1964). The use of such tacit admissions in federal criminal cases, especially when the defendant is in the custody of law enforcement officers, has not been approved. e.g. McCarthy v. United States, 25 F.2d 298 (C.A. 6, 1928); also see United States v. Brinson, 411 F.2d 1057 (C.A. 6, 1969) holding the use of such evidence "plain error." F.R.Cr.P. 52(b). More recently the use of such admissions by the states has been held erroneous.

"* * * [I]t is impermissible to penalize an individual for exercising his Fifth Amendment privilege when he is under police custodial interrogation. The prosecution may not, therefore, use at trial the fact that he stood mute or claimed his privilege in the face of accusation." Miranda v. Arizona, 384 U.S. 436, 468, n. 37, 86 S.Ct. 1602, 1625, 16 L.Ed.2d 694 (1966).

While the Court is unaware of any decision on this particular point, other rules established by *Miranda* and applicable to the states have been held to operate prospectively only. Johnson v. New Jersey, supra. Consequently, the voluntary-involuntary standard that governed the use of confessions before *Miranda* controls this trial conducted in 1950.

There is authority that the use of tacit admissions is either an involuntary confession or such an unfair procedure that other facets of due process have been denied. U. S. ex rel. Smith v. Brierly, 267 F.Supp. 274, aff'd 384 F.2d 992 (C.A. 3, 1967); U. S. ex rel. Staino v. Brierly, 269 F.Supp. 753, aff'd 387 F. 2d 597 (C.A. 3, 1967). See U. S. ex rel. Parker v. McMann, 308 F.Supp. 477 (S. D.N.Y., 1969). Notwithstanding these authorities, this Court is not persuaded that the use of a tacit admission is to be equated with an involuntary or coerced confession. Involuntary confessions resulted when policemen through physical or psychological pressures compelled persons accused of crimes to admit certain incriminating acts. Assuming that the Sheriff even arranged Rudder's accusations, the Court does not equate these acts with those acts that were generally productive of involuntary confessions. The authorities indicate that this admission arose from a rule of evidence that made the *conduct* of an accused when confronted admissible in certain circumstances. Wigmore on Evidence (3d ed.) §§ 292, 1071; McCormick on Evidence (1954 ed.) § 247.

In this sense the Court is of the opinion that tacit admissions when used are more analogous to comment upon the failure to testify than to involuntary confessions. Comment upon the failure to testify has also been condemned. Griffin v. California, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d (1965); Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). An examination of the charge in *Griffin*, supra, 380 U.S., at 610, 85 S.Ct. 1229, and in *Chapman*, supra, 386 U.S. at 19, n. 2, 87 S.Ct. 824 (while the language used by the trial court in the above-quoted portion of its charge was stronger) re-enforces this Court's view that the use of a tacit admission is a comment upon the accused's failure to testify. In view of the holding in Tehan v. U. S. ex rel. Shott, 382 U.S. 406, 86 S.Ct. 459, 15 L. Ed.2d 453 (1966) that the rule announced in *Chapman* is not retroactive, the use of the tacit admission and the Court's charge is not reversible error.

Petitioner asserts that pre-trial publicity raised such excitement that the trial judge's failure to grant a change of venue was a denial of due process. In a closely related issue he alleges that irregularities in the handling of the jury during the five-day trial, especially relating to pictures of the jury, also denied him due process. Copies of news-

papers filed at the state post-conviction proceeding show that Luallen had been pardoned for a robbery conviction, that he was released awaiting sentence after a guilty plea to robbery and housebreaking charges at the time of the murder, that he had previous convictions for felonious assault, automobile larceny and moonshining; and that he had served prison sentences on both state and federal violations. There are also copies of newspapers, with pictures showing counsel table during the trial and a picture of the jury made prior to trial. An article entitled "Belly full of Murder" in a magazine called "Inside Detective" carrying an account of the murder was distributed before the trial in Roane County. In a divided decision, the Tennessee Criminal Court of Appeals resolved these issues adversely to petitioner. Luallen v. State, supra, n. 1. We hold that this decision was in conformity with announced federal constitutional principles. Sheppard v. Maxwell, 384 U.S. 333, 86 S.Ct. 1507, 16 L.Ed.2d 600 (1966); Estes v. Texas, 381 U.S. 532, 85 S.Ct. 1628, 14 L.Ed.2d 543 (1965); Rideau v. Louisiana, 373 U.S. 723, 83 S.Ct. 1417, 10 L.Ed.2d 663 (1963).

■ Petitioner alleges that pieces of a lemon and the spent slug removed from his leg at the hospital were introduced as evidence in violation of the Fourth Amendment. Regardless of the legality of the search, the exclusionary rule announced in Mapp v. Ohio, 367 U. S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961) has been held not retroactive. Linkletter v. Walker, 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965). Since these searches occurred in 1950, petitioner's allegations cannot be the basis for the requested relief.

■ Petitioner alleges that his right to have compulsory process for obtaining a favorable witness was denied him. Immediately before petitioner closed his proof, Bobbie Grant, the nephew of the victim, was called and it was announced to the Court that he was not present or summoned. The Court observed that if a summons had been issued an attachment would be appropriate. It was further observed that the defense had announced ready for trial. Petitioner's counsel expressed some surprise at the absence of the witness. He made an offer of proof that the witness would testify that he, Grant and Rudder, an accomplice and the State's Principal witness, were familiar with the home of the decedent. The defense then rested. At the post-conviction hearing, evidence was presented that showed a subpoena issued for Grant on June 5, 1950, and returned executed on June 7, 1950, five days before the trial started. The record does not show that petitioner's counsel pressed the matter at trial or that he interposed any objection to the trial judge's action. There is no contention in the motion for a new trial that compulsory process was denied, and no such error was assigned on direct appeal. From the offer of proof the Court assumes that the witness' testimony would only have impeached Rudder's testimony further and that counsel apparently considered it cumulative. The Court is satisfied that counsel waived any right of compulsory process by his subsequent acts.

■ Petitioner alleges that basing his conviction upon the unsupported testimony of the co-conspirator and accomplice, Rudder, was constitutional error. The evidence was not unsupported. The record conclusively shows guilt beyond a reasonable doubt. We concur in the opinion of the Criminal Court of Appeals that there is no constitutional right that requires that a co-conspirator's testimony be corroborated. Tillery v. United States, 411 F.2d 644, 647, n. 1 (C.A. 5, 1969).

It is, therefore, ordered that the petition for habeas corpus be, and same hereby is, denied.