THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* PHILIP TRAVATO, Appellant.

Argued December 1, 1955; decided December 28, 1955.

*Joseph Winston* and *Sidney R. Siben* for appellant. I. At the end of the trial, defendant's motion to dismiss should have been granted since the proof presented fell below the standard required to rebut the presumption of defendant's innocence. (*People* v. *Ledwon,* 153 N. Y. 10; *People* v. *Lewis,* 275 N. Y. 33; *People* v. *Bearden,* 290 N. Y. 478; *People* v. *Gluck,* 188 N. Y. 167; *People* v. *Wrieden,* 299 N. Y. 425.) II. There was no evidence to warrant sending to the jury defendant's alleged possession of burglar's tools in violation of section 408 of the Penal Law. (*People* v. *Kobryn,* 290 N. Y. 897; *People* v. *Birnbaum,* 208 App. Div. 476; *People* v. *Jenman,* 296 N. Y. 269.) III. Reversible error was committed when witnesses for the People persistently made reference to the fact that defendant would not speak after being arrested, and further error was committed when the Judge adverted to this in his charge to the jury. (*People* v. *Rutigliano,* 261 N. Y. 103; *People* v. *Allen,* 300 N. Y. 222; *People* v. *Infantino,* 224 App. Div. 193; *People* v. *Abel,* 298 N. Y. 333; *People* v. *Mleczko,* 298 N. Y. 153; *People* v. *Hyman,* 284 App. Div. 347, 308 N. Y. 794.)

*Harry C. Brenner, District Attorney* (*Henry Tasker* of counsel), for respondent. I. The guilt of defendant was established beyond a reasonable doubt. (*People* v. *Birnbaum,* 208 App. Div. 476.) II. Defendant received a fair trial. (*People* v. *Slover,* 232 N. Y. 264; *People* v. *Mleczko,* 298 N. Y. 153; *People* v. *Buchalter,* 289 N. Y. 181.)

Van Voorhis, J. Defendant has been convicted after a trial of burglary in the third degree, and of grand larceny in the first degree, in connection with the theft of fifteen sewing

machines taken from the Wonderknit Factory on South Fourteenth Street, in the Village of Lindenhurst, Suffolk County, Long Island. He has also been convicted of having burglar's tools in his possession. These exploits were conducted with an accomplice, according to the indictment, named Henry Fanning, who pleaded guilty and exonerated defendant if his testimony is to be believed.

The evidence against defendant was mainly circumstantial. Fanning's version is that on the evening of September 1, 1952, he asked defendant to keep him company on an automobile ride from his home in Brooklyn to call upon his mother at Copiague, near Lindenhurst, Long Island, and that when they came to Lindenhurst, he dropped defendant off at a bar and grill, and told him that he would call for him later after visiting his mother. Fanning testified that when he discovered that his mother had retired for the night, he burglarized the Wonderknit Factory instead of visiting her. Almost immediately after the burglary had been accomplished, Fanning and defendant were discovered by the police in Fanning's automobile, with the fifteen sewing machines in the back seat which had been stolen from Wonderknit. Defendant's hands were oily and greasy at the time of their arrest, and his shirt and the top of his trousers were covered with fresh oil. In this oil and grease were little red and white cuttings of textile material or lint, which were also discovered in scrapings beneath defendant's fingernails as shown by microscopic examinations at the police laboratory. Fanning testified that defendant's clothes were clean when they left Brooklyn. These cotton fibers were identified by the laboratory technician as cotton lint similar to that which was present upon the sewing machines. These circumstances, except for error in the admission of evidence and in the charge, would be sufficient to sustain defendant's conviction of third degree burglary and of grand larceny in the first degree, upon the basis that he and Fanning were in recent and exclusive possession of the fruits of these crimes (*People* v. *Galbo,* 218 N. Y. 283, 290).

Nevertheless, defendant's conviction of these crimes must be reversed and a new trial granted with respect to them by reason of error in the reception of evidence, which was aggravated rather than corrected in the charge. The presence of oil, grease and lint upon defendant's clothing was treated as an important

link in the chain of circumstantial evidence connecting him with the commission of these crimes, and this was admissible evidence of an important kind. It became of consequence to learn where and how defendant got this oil, grease and lint upon his shirt and trousers. It was so noticeable when he was arrested that the police officers questioned him about it on the scene. All of this tends to make one believe that defendant participated actively in this affair. The difficulty in affirming defendant's conviction upon these charges consists, however, in the circumstance that one of the arresting policemen, and also an investigator attached to the District Attorney's office, were permitted to testify that repeatedly defendant refused to answer where he got this oil and grease upon his hands and clothing. It is " a principle now firmly established in the law of this State that ' a person in custody accused of a crime is under no duty to speak and that his silence should not be counted as giving assent.' " (LEWIS, J., quoting from *People* v. *Pignataro,* 263 N. Y. 229, 236, in *People* v. *Abel,* 298 N. Y. 333, 335.) In *People* v. *Rutigliano* (261 N. Y. 103, 107), it was said per POUND, Ch. J.: " No cautious person, when in custody, accused of crime would care to enter into a discussion of his guilt or innocence with his captors and co-defendants, when what he said might be used against him. * * * He is then under no duty to speak and his silence should not be counted as giving assent to what he hears. If he had counsel, he would doubtless be advised not to talk. If he had not, he should not be prejudiced thereby."

When it came to the charge, the court did not instruct the jury that defendant had the right to remain silent, and that his refusal to explain how his clothing and hands became soiled signified nothing, but, instead, the language of the charge appeared to imply that these refusals to talk might be regarded as evidence of guilt. The jury were told, concerning Police Officer Ford: " And you will recall, if it agrees with your recollection, that he asked the defendant when he was questioning the defendant, how he got his clothes greasy and oily, and the defendant refused to answer."

Although defendant's counsel took no exception to the charge, the point is raised by defendant's motion to strike out Officer Ford's testimony about defendant's refusal to answer questions of this nature. It was not possible for defendant's trial counsel

to know in advance what Officer Ford was about to say upon the witness stand, and there would have been nothing objectionable in his testifying to some admission against interest or confession which defense counsel probably expected the witness was about to state that the defendant had made to him. However, after it appeared that the witness was merely being interrogated in order to develop that defendant refused to answer damaging questions while he was in custody, then, for the first time, was it appropriate for defendant's counsel to intervene, and he did so, in the customary manner, by moving to strike out the testimony. The court refused to strike it out upon the basis that defendant's counsel had opened the door, saying: "No; I think you brought that out yourself — you asked for conversations of the Defendant, conversations the Defendant had with the officers. I think he is permitted to bring it out now."

This was incorrect. Defendant's counsel had not asked for any conversation with defendant while Officer Ford was on the stand, inasmuch as his examination in chief had just begun as a witness for the People, and there had been no cross-examination. What the Trial Judge referred to was evidently a colloquy during the direct examination of Police Officer Poldino, who had previously testified. The prosecuting attorney had addressed a question to Poldino: "What, if anything — *did you say anything to him* about what occurred at the Wonderknit Factory?" (Italics supplied.)

To this defendant's counsel said:

"I am going to object, your Honor. If they want conversation, fine, but not what the police officer said to the Defendant.

"The Court: I think he is just directing his attention to some particular phase of the conversation. I think it is permissible. Objection overruled."

The objection taken was proper. Its being overruled was not reversible error, inasmuch as Poldino afterward testified to nothing which was inadmissible. Nevertheless, it was erroneous for the Trial Judge to construe that objection, when it came to the examination of Ford, as having had the effect of a waiver by defendant's counsel of the right to object to use by the prosecution of defendant's silence or refusal to answer during his inquisition. It happened that Poldino testified that defendant

gave an explanation of how he got the grease and other material upon his hands and clothing, viz., that he was a stevedore and worked on the New York City docks. Poldino's testimony differed, in this respect, from that of the subsequent witnesses Ford and Investigator Gardiner. The valid objection to the question which has been mentioned which the prosecuting attorney addressed to Poldino, could not be interpreted as having surrendered defendant's right to object to testimony by Ford that the defendant refused to answer when he was asked how his hands and clothing became soiled in this manner, or to move to strike it out.

Defendant's conviction of possessing burglar's tools in violation of section 408 of the Penal Law must be reversed and that charge dismissed. There is testimony that there were screw drivers and gloves in the glove compartment of Fanning's automobile. Testimony was stricken from the record that a hacksaw, hammer, chisels and crowbar were found locked in the trunk compartment. The record contains insufficient basis to sustain the conviction upon this count (*People* v. *Spillman,* 309 N. Y. 295).

The judgment of conviction of defendant is reversed, the third count in the indictment is dismissed charging him with possession of burglar's instruments contrary to section 408 of the Penal Law, and a new trial is ordered under the first and second counts charging defendant with burglary, third degree, and grand larceny in the first degree.

Conway, Ch. J., Fuld, Froessel, Burke and Cohn *, JJ., concur; Desmond and Dye, JJ., taking no part.

Judgments, insofar as they convict defendant of the crime of possession of burglar's instruments, reversed and count 3 of the indictment dismissed and, insofar as they convict him of the crimes of burglary, third degree, and grand larceny, first degree, reversed and, as to counts 1 and 2 of the indictment, a new trial is ordered.

---

* Designated pursuant to section 5 of article VI of the State Constitution in the temporary absence of Desmond and Dye, JJ.