■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v. ABDUL KARIM AL-KANANI, Also Known as KARIM AL-KANANI, Appellant.— Appeal from a judgment of the County Court, Suffolk County, rendered May 27, 1966, convicting defendant of murder in the first degree, upon a jury verdict, and sentencing him to life imprisonment. Judgment reversed, on the law, and new trial ordered. The findings of fact below are affirmed. Under the first count

of an indictment returned May 1, 1964 defendant, as revealed in a bill of particulars subsequently furnished, was specifically charged with having killed his wife in the early morning hours of April 22, 1964 "by striking her with a blunt instrument and stabbing her with a pointed instrument about the head and neck thereby causing fatal injuries." Upon his arraignment on May 8, 1964, at which time he was represented by retained counsel, he entered pleas of "not guilty" and "not guilty with a specification of insanity" to that charge. On June 2, 1964 the County Court, on motion of defense counsel, committed defendant to Central Islip State Hospital for psychiatric examination pursuant to section 658 of the Code of Criminal Procedure. On July 2, 1964 a report was submitted to the court by the Director of the hospital with a finding that defendant, after examination by two qualified psychiatrists, was in such a state of "idiocy, imbecility or insanity as to be incapable of understanding the charge, the proceedings, or of assisting with his defense", and recommending that he should be committed to an appropriate institution. Defendant was thereupon returned to the custody of the Sheriff to await further proceedings. On July 27, 1964 a motion to confirm the report was granted and the trial indefinitely suspended. The following day an order was signed committing defendant to the Mattewan State Hospital for the Criminally Insane. On December 10, 1965, upon certification by the Superintendent of the Mattewan State Hospital pursuant to section 662-b of the Code of Criminal Procedure that defendant was "no longer in such a state of idiocy, imbecility or insanity as to be incapable of understanding the charge" then pending against him, an order was signed directing the Sheriff to return him to the County Jail to await trial or dismissal of the proceedings against him. On December 27, 1965 defendant was again arraigned in the County Court and again entered pleas of "not guilty" and "not guilty by reason of insanity." He was then rearraigned on March 15, 1966, at which time the second and third counts of the indictment were severed and dismissed and the pleas to the murder charge were permitted to stand. The case thereupon proceeded to trial. It was concluded on April 13, 1966 when the jury returned a verdict of guilty of murder in the first degree as charged in the indictment. Defendant now appeals from the judgment of conviction rendered thereon. Among the errors assigned is only one which, in our opinion, mandates reversal. This was the admission of the testimony of Dr. David Abrahamsen, called as a rebuttal witness by the People, over the objection of defense counsel. Consideration of this assignment does not necessitate a discussion of the facts in the case or the circumstances surrounding the prosecution. After certification by the examining doctors at Central Islip State Hospital to the effect that defendant was incapable of understanding the charge then pending against him, and while he was in the Suffolk County Jail awaiting commitment to the Mattewan State Hospital, Dr. Abrahamsen, a psychiatrist, was retained by the District Attorney to examine defendant. The examination was conducted in the jail on July 17 and July 24 of 1964. This was done without notice to defendant's attorney or an order of the court, and without defendant's knowledge of the purpose of the examination. The doctor was then permitted to testify affirmatively on the issue of defendant's sanity at the time of the commission of the crime. Defendant contends that the admission of this testimony constituted a violation of his privilege against self incrimination and of his right to the assistance of counsel under the Fifth, Sixth and Fourteenth Amendments of the Federal Constitution. Since the burden of proof rests upon the People to establish that a defendant did not lack substantial capacity to know or appreciate the nature and consequence of his act or that such conduct was wrong, the prosecution should be permitted to examine him

in order to rebut testimony to the contrary. However, such an examination must be conducted in a manner that is not in violation of his constitutional safeguards. Dr. Abrahamsen was not appointed by the court or designated by statute to make an impartial and disinterested mental examination of defendant; and it cannot be assumed that his examination was conducted in a manner consistent with the constitutional rights of the accused. Instead he must be regarded as a prosecution witness who may have compelled the accused to furnish evidence against himself. Though he testified to no inculpatory statements made by defendant, based upon the defendant's "whole attitude" the witness came to the conclusion that the defendant was a malingerer, that he "was pretending to be mentally sick." This conclusion did not directly incriminate the accused as the perpetrator of the homicide, but it bore directly on the validity of his plea of "not guilty by reason of insanity", and was sufficient to raise an inference as to his consciousness of guilt. Notice may be taken that the examination to which defendant was subjected by this witness necessarily involved questioning to which defendant responded by word or action in such a way as to indirectly incriminate himself. It is now well settled in this jurisdiction that after indictment the right of an accused to the assistance of counsel at every stage of the proceeding against him is absolute (*People* v. *Di Biasi,* 7 N Y 2d 544; *People* v. *Waterman,* 9 N Y 2d 561, 565). In *Waterman* Judge Fuld, who delivered the majority opinion of the court, said, "Any secret interrogation of the defendant, from and after the finding of the indictment, without the protection afforded by the presence of counsel, contravenes the basic dictates of fairness in the conduct of criminal causes and the fundamental rights of persons charged with crime." As expressed in a concurring opinion in *Spano* v. *New York* (360 U. S. 315, 325) by Mr. Justice Douglas: "Depriving a person, formally charged with a crime, of counsel during the period prior to trial may be more damaging than denial of counsel during the trial itself." The Supreme Court of the United States has since extended the guarantee of this basic protection to a defendant from whom incriminating statements had been secretly elicited by government agents in the absence of his counsel while he was no longer in custody but free on bail (*Massiah* v. *United States,* 377 U. S. 201). That the defendant here did not insist on the presence of his lawyer is immaterial (*People* v. *Di Biasi, supra*). Indeed he could not have been expected to, as he had no idea he was under interrogation by a prosecution witness, and for that reason as in *Massiah* (*supra,* p. 206) he was the more seriously imposed upon. The importance of Dr. Abrahamsen's testimony to the prosecution's case cannot be denied. His examination and conclusion as to defendant's legal sanity at the time of the commission of the crime was the closest in point of time to the incident and he was the only one to testify that defendant was fully capable of understanding the nature of the charges against him and of making a defense at the time of his examination in July of 1964. The admission of this testimony then constituted substantial error and was clearly prejudicial to the defense. Beldock, P. J., Christ, Munder and Martuscello, JJ., concur; Hopkins, J. concurs, with the following memorandum: I agree that the judgment must be reversed and a new trial ordered on the ground that defendant should not have been examined by Dr. Abrahamsen in the absence of, and without notice to, his counsel, and that testimony as to the sanity of defendant based on that examination should not have been received into evidence. In addition, I think that evidence as to defendant's silence under questioning by the police was improperly admitted. That evidence was that, after giving the police a statement concerning his actions on the night of the crime, defendant, upon persistent interrogation by the police, finally told them that he would not answer

any questions until he saw a lawyer. This evidence was inadmissible to establish guilt (*People* v. *Bianculli*, 9 N Y 2d 468; *People* v. *Travato*, 309 N. Y. 382). The prosecution argues that the evidence became admissible to show the sanity of defendant shortly after the commission of the crime — an issue raised by defendant. But defendant by his plea had raised both the issue of guilt and the issue of sanity. He did not waive his right to require the prosecution to establish his guilt beyond a reasonable doubt by also raising the issue of sanity. Hence, the inadmissible character of the evidence was not lost, simply because two issues, rather than one, were raised by defendant. It may be that it would be desirable under these circumstances that separate trials of these issues be had, but no provision in the present Code of Criminal Procedure exists for that purpose. This is a subject which might well be studied by the Legislature as part of its program for the revision of the code.