THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v. GREGORY RAYMOND JOSEPH WHEELER, Appellant.

Second Department, January 29, 1973.

William E. Hellerstein and Robert Kasanof (James R. Sullivan of counsel), for appellant.

Thomas J. Mackell, District Attorney (Charles M. Newell of counsel), for respondent.

SHAPIRO, Acting P. J. When Thomas F. Shore, Jr., the assistant chief special agent of the American Express Company, observed the defendant purchasing a ticket at the Eastern Airlines counter of the John F. Kennedy International Airport with the use of a credit card without checking his luggage, his suspicions became aroused.

Upon investigation, Shore discovered that the defendant had used a Bank Americard which had been reported stolen. Shore thereupon contacted the Port of New York Authority Police Department and Detective Shinkle of that department placed the defendant under arrest when he admitted, after originally asserting otherwise, that he was not the person to whom the credit card had been issued. A search then followed of the defendant and his attache case, which revealed 40 credit cards issued in 30 different names, several thousand dollars' worth of travelers' checks and a license to operate an automobile.

At a pretrial *Huntley* hearing, Detective Shinkle testified that when advised of his rights the defendant indicated that he would not talk in the absence of an attorney. It was further established at the hearing that the defendant thereupon was placed in a detention cell without being interrogated and that about two hours later he asked to speak to Shore, who, with another American Express agent, and unaccompanied by any peace officers, spoke to the defendant, who then expressed his willingness to reveal information in exchange for lenient treatment and in the course of the conversation admitted his guilt.

At the trial, and in the presence of the jury, the court questioned Detective Shinkle with respect to the warnings given the defendant following his arrest and what the defendant had replied. The culmination of this line of questioning was as follows:

" THE COURT: And what else, if anything, did you say to him?

" THE WITNESS: If he did not have an attorney available, he had the right to remain silent until he had had an opportunity to consult with one, and to have one present during any questioning by the police.

" THE COURT: What did he say to that?

" THE WITNESS: He replied that he understood.

" THE COURT: Did he reply that voluntarily, or did you ask him that question?

" THE WITNESS: I asked him did he understand.

" THE COURT: Yes?

" THE WITNESS: And he said yes.

" THE COURT: And after that?

" THE WITNESS: I asked him did he wish to make any statements without an attorney present. He said no, he would like to have an attorney present.

" Q. Were those the words he used or do you recall?

" A. I don't recall the exact words, but he said he would not answer any questions at that time without consulting an attorney."

The defendant was convicted of four counts of criminal possession of stolen property in the second degree, two counts of criminal possession of a forged instrument in the second degree. and possession of a forged license to drive an automobile.

The defendant argues that it was error for the trial court to adduce testimony before the jury showing that he had refused to answer questions in the absence of counsel, particularly as the court was aware of such refusal (from the *Huntley* hearing).

Although no objection was then raised to the court's questions, the Judge, *sua sponte,* informed the jury that the defendant was within his constitutional rights in declining to answer and that no inference could be drawn therefrom. Under the circumstances, the introduction of this testimony was not prejudicial error.

Cases such as *People* v. *Orgovan* (14 A D 2d 482), *People* v. *Christman* (23 N Y 2d 429), *People* v. *Finney* (39 A D 2d 749) and *People* v. *Travato* (309 N. Y. 382) are not in point. In *People* v. *Orgovan* (*supra*), the Appellate Division, Fourth Department, held that prejudicial error was committed when the Trial Judge, in refusing to strike an officer's testimony of the defend-

ant's refusal to answer, commented, "It is acceptable to interpretation one way or the other," thereby permitting the jury to speculate that the refusal to answer could lead to an inference of guilt.

Similarly, in *People* v. *Christman* (*supra*), there was a reversal because of the prosecutor's comment in summation that the defendants' refusal to answer created an inference that their defense of alibi was false. An objection was overruled on the ground that the prosecutor's remarks were " fair comment ".

In *People* v. *Finney* (*supra*), we reversed a conviction of defendant Ivy Pattavino as the result of the repeated elicitation of testimony by the prosecutor that this defendant had refused to answer questions at the time of her arrest. The trial court denied a request that the jury be instructed that defendant Pattavino had a right to remain silent and that such silence could not create an inference against her.

In *People* v. *Travato* (*supra*), there was a reversal because two witnesses were permitted to testify concerning the defendant's refusal to answer questions and the language of the charge to the jury implied that such refusal could be regarded as evidence of guilt.

The overriding principle violated in the cited cases is that no inference may be drawn from silence (see *People* v. *Rutigliano*, 261 N. Y. 103, 107). That principle was not violated in this case. The testimony came in with regard to the defendant's understanding of the *Miranda* warnings. No objection was made thereto, no further references were made to such testimony save for a passing reference thereto in the charge, to which reference no exception was taken, and the court affirmatively informed the jury that no inferences could or should be drawn from the defendant's silence (cf. *People* v. *Bianculli*, 9 N Y 2d 468).

In any event, the full confession given to Shore shortly thereafter rendered harmless any prejudice resulting from the testimony that the defendant had wished to remain silent.

As a further citation of error, it is contended that various portions of the prosecutor's summation and of the charge to the jury amounted to unfair comment upon the defendant's failure to testify. In the course of his summation, the prosecutor, in discussing the elements of " knowing possession ", said, " And knowingly is stated in the indictments regarding the criminal possession charges. But we cannot go into a man's mind. That's beyond human capability without him speaking or saying anything. We can't see into his mind. So we have to go by what the facts show." No objection was made to this state-

ment; and its effect, if any, was immediately overcome when Judge BALSAM, at the outset of his charge, instructed the jury that the defendant had the right to stand mute and that his failure to testify could not be considered as evidence of, or give rise to an inference of, guilt. He then added that the jurors could not consider what the defendant might have said had he taken the stand. Again, on three occasions the jury was instructed that the presumption arising from the possession of recently stolen goods stood unless rebutted by the defendant, but no objection was taken to the charge in this regard.

A review of some of the leading cases in the area of comment upon a defendant's failure to testify indicates that reversal is not warranted in this case. In *People* v. *Fitzgerald* (156 N. Y. 253), the Court of Appeals noted that it is never necessary to add any explanation to the statutory language that no presumption can result against a defendant from his failure to testify. In *Fitzgerald*, the defendant was prejudiced by the trial court's repeated statements that the jury could not assume that the defendant would have denied the charge had he taken the stand. A comment of that nature was, of course, much more serious than the Trial Judge's general admonition in this case not to consider what the defendant might have said had he testified.

In *People* v. *Forte* (277 N. Y. 440), the Court of Appeals condemned an instruction that although no unfavorable inference could be drawn from the defendant's failure to testify, the jury could consider most strongly against him those facts and circumstances which he might have controverted or explained were he innocent. The charge to the jury was held to have, in effect, sanctioned a presumption against the defendant for his failure to testify.

In *People* v. *McLucas* (15 N Y 2d 167), the defendant's privilege against self incrimination was held violated by the Trial Judge's repeated improper stressing to the jury that a police officer's testimony that the defendant had denied his guilt when arrested did "not take the place of sworn testimony from this witness chair " (p. 171).

In *People* v. *Arthurs* (3 A D 2d 966), the Appellate Division, Fourth Department, held that the statement that the defendant's failure to testify was his own " business " impaired the rule that no presumption can arise from the defendant's failure to testify.

In *People* v. *Avalone* (255 App. Div. 283, 284), the Appellate Division, First Department, reviewed the following charge: " ' The law is that the defendant can stand mute. He does not have to take the stand; he does not have to testify, and that

may not be used against him, *except* with respect to the law which I have charged you about, as to recent possession. If you find that he had exclusive, conscious and recent possession, and if you find that he had such possession and it was recent, conscious and exclusive, and there was a failure to explain it, or it was falsely explained, and it was with knowledge and felonious intent, in spite of the fact that he has not taken the stand, you would be justified, if you find all the elements I have defined for you, in finding the inference of such recent, conscious and exclusive possession. *Ordinarily* the defendant does not have to take the stand, and neither the District Attorney nor the Judge may comment on that fact ' '' (emphasis in original). The court there held that the use of the words '' except '' and '' ordinarily '' conveyed the impression that in certain circumstances a defendant might be obligated to testify.

In *People* v. *Johnson* (37 A D 2d 733), we held that error was committed in a charge which permitted the jury to determine the effect to be accorded the defendant's failure to testify.

On the other hand, in *People* v. *Lebovitz* (31 A D 2d 960, 963, affd. 26 N Y 2d 924), we rejected the contention that it was reversible error to charge the jury that it was the defendant's right and privilege to remain mute '' ' *if* the People have failed to sustain the burden of proving guilt beyond a reasonable doubt ' ''.

A common thread runs through all of these cases, namely, that a charge which, directly or by inference, permits the jury to use the defendant's failure to testify as an inference of guilt is defective and constitutes reversible error. The trial court's remark in this case, that the jury could not speculate as to what the defendant might have said had he testified, while better left unsaid, did not permit the jury to infer guilt from his failure to testify and the defendant apparently did not consider the statement of great moment for he took no exception thereto.

Another alleged error is that the prosecutor, in his summation, referred to an inability to penetrate a man's mind, but that merely dealt with the nature of the proof necessary to establish intent. He was simply contending that a man's intentions are to be determined by his actions. The remark would have been equally valid if the defendant had testified. A brief resumé of some of the cases in which prosecutorial references to a failure to testify were held error indicates the essential differences between those cases and this one.

In *People* v. *Hetenyi* (304 N. Y. 80), reversal was ordered as the result of the prosecutor's remarks to the jury that all of the facts and motivations involved in the case could not be known as long as the defendant chose to stand on his constitutional right to remain silent.

In *People* v. *Leavitt* (301 N. Y. 113, 118), the court found prejudicial error in the prosecutor's comment to the jury that " ' you or I wouldn't sit back ' " and not testify " ' if we were in fact innocent ' " and that the proof was " 'sitting right there in that chair (indicating) ' ". (See, also, *People* v. *Mirenda*, 23 N Y 2d 439; *People* v. *Rial*, 25 A D 2d 28, 30.)

In *People* v. *Yore* (36 A D 2d 818), although the prosecutor twice committed error when he commented that a police officer's version of a bribe offer made to him by the defendant was uncontradicted, the conviction was approved because the trial court immediately intervened and clearly explained the defendant's constitutional rights.

As the prosecutor's comment in this case did not highlight the defendant's failure to testify or suggest that it was the result of a desire to withhold evidence otherwise presumptive of guilt, it may not be deemed prejudicial error.

Finally, we have the Trial Judge's references to presumptions arising from the facts, which presumptions stand unless rebutted by the defendant. In *People* v. *Rolchigo* (33 A D 2d 1060, affd. 28 N Y 2d 644), the Appellate Division, Third Department, noted that a remark by the prosecutor that the defendant had failed to controvert the People's evidence was not reversible as the testimony could have been controverted by any defense witness and not necessarily by the defendant.

The question of the propriety of a charge as to the presumption arising from possession of recently stolen property in a case in which the defendant does not testify was laid to rest in *People* v. *Moro* (23 N Y 2d 496). The court there noted (pp. 501-502):

" Section 393 of the Code of Criminal Procedure, which provides the basis of defendant's second argument, recites that the neglect or refusal of a defendant to testify in his own behalf does not create any presumption against him. (Code Crim. Pro., § 393.) It is argued that the Judge prejudiced this defendant and violated the provision of the above statute when he remarked that the defendant had unexplained possession of the stolen car. Reference is also made to recent Supreme Court

decisions re-emphasizing the rule that no comment may be made with regard to a defendant's failure to testify. (See *Malloy* v. *Hogan,* 378 U. S. 1; *Griffin* v. *California,* 380 U. S. 609.)

" As we noted earlier, the law of this State clearly provides that the unexplained possession of the fruits of a crime creates an inference that the possessor is a criminal. Appellant now contends that the inference is overcome only when he testifies and explains such possession. Were this so, his argument would indeed have merit.

" The inference to be drawn against the defendant arises from the proven fact of his unexplained possession of the fruits of the crime. The inference continues only until some evidence is presented to explain this possession. It may certainly be overcome without the defendant's testimony and is not sustainable merely because the defendant has refused to take the stand. The existence of the inference in no way encroaches upon the well-established right of the defendant to refrain from testifying in his own behalf.

" The facts of this case illustrate this point. The Trial Judge showed great care when he referred to the unexplained possession of the automobile by the defendant. He made his statement when summarizing the facts and while recalling a portion of the testimony of one of the arresting police officers. Moreover, he twice informed the jury, during the trial, that section 393 of the Code of Criminal Procedure precluded them from drawing any inferences against the defendant because of his failure to testify. Under such circumstances, it is apparent that a defendant's rights are unimpaired by the fact that an inference may arise from his unexplained possession of the fruits of a crime. (See *Wangrow* v. *United States,* 399 F. 2d 106, 118, cert. den. 393 U. S. 933.) "

This case is indistinguishable from *Moro.* The Judge's statement here as to the nature of the presumption contained no reference to the need for testimony by the defendant personally and the jury was charged in the only way possible if the statutory presumption is to be given any effect.

The defendant further contends that the failure of the trial court to permit the jury to pass upon the question of the voluntariness of the defendant's statement to Shore was error. Under the circumstances of this case, I do not believe that to be so. In *Jackson* v. *Denno* (378 U. S. 368), the Supreme Court held that the New York procedure utilized to determine the voluntariness of confessions was constitutionally defective because defendants did not in advance of the trial of the issue of their

guilt receive a clear-cut ruling whether a confession intended to be offered had been voluntarily given. Pursuant to that ruling, in *People* v. *Huntley* (15 N Y 2d 72), the Court of Appeals elected to follow the Massachusetts procedure, under which the jury passes upon voluntariness only if and after the court has resolved that issue against the accused, although the Supreme Court of the United States (in *Lego* v. *Twomey*, 404 U. S. 477, 489-490) had held that there is no constitutional requirement that the issue of voluntariness be submitted to the jury for its determination if the trial court has independently determined that question adversely to the defendant.

In *People* v. *Mials* (27 A D 2d 944), this court decided that it was error not to submit the question of voluntariness to the jury despite the failure of defense counsel to request such a submission in a case in which (a) a *Huntley* hearing had been requested and held and (b) various witnesses were cross-examined as to the defendant's condition at the time he made his admissions. We held that the voluntariness issue must be submitted for determination by the jury unless there is a concession of voluntariness or unless an affirmative waiver of the right to have the issue submitted to the jury is apparent from the record.

In *People* v. *Watts* (29 A D 2d 878), we held that the mere holding of a *Huntley* hearing did not require submission of the question of voluntariness to the jury *if no proof of involuntariness was introduced at the trial.*

In *People* v. *Cesare* (30 A D 2d 868, affd. 27 N Y 2d 965), we noted that the failure to submit the voluntariness issue to the jury was not reversible error in the absence of an exception or request to charge, despite the holding of a *Huntley* hearing. We further noted that even if error did occur, it was harmless beyond a reasonable doubt, apparently because the confession in question had clearly been voluntary.

Thereafter, in *People* v. *Cefaro* (23 N Y 2d 283), the court rejected a contention that the mere placing of a confession in evidence raises an issue as to its voluntariness. It noted that the question of voluntariness need not be submitted to the jury in the absence of proper objection and a *proper offer of proof of involuntariness sufficient to raise a factual dispute.*

In *People* v. *Cerrato* (24 N Y 2d 1), the court held that the failure to instruct the jury on voluntariness was nonreviewable, as the defendant had neither requested such a charge nor objected to the charge as given (see CPL 470.05, subd. 2).

Here, no objection was raised to the introduction of the defendant's statement; no request for a charge as to voluntari-

ness was made; and no exception was taken to the failure to charge the jury as to this issue. It is clear that the defendant made his statement to Shore, who saw him at his own request, in the hope of lenient treatment. No serious question of voluntariness is raised and I am convinced beyond a reasonable doubt that the statement was voluntarily made. Furthermore, the only testimony at the trial which even remotely had anything to do with voluntariness was the testimony adduced from Shore that the defendant had told Detective Shinkle, about an hour and a half before he asked to speak to Shore, that he wanted a lawyer.

Although in summation defense counsel rhetorically asked, " Wouldn't it be good if we had a written statement voluntarily made and signed by this defendant? ", it is clear that he was not arguing that the defendant's statements had been made involuntarily, but rather that he had not in fact made any statement to Shore. Hence, the trial court's failure to submit the issue of voluntariness to the jury was not error.

We have considered the other points raised by the defendant and find them to be without merit.

Accordingly, the judgment of conviction should be affirmed.

GULOTTA, CHRIST, BRENNAN and BENJAMIN, JJ., concur.

Judgment of the Supreme Court, Queens County, rendered March 19, 1971, affirmed.