THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v HARRY SHURN, Appellant.

Second Department, July 2, 1979

### APPEARANCES OF COUNSEL

*Daniel A. O'Connor* for appellant.

*Carl A. Vergari, District Attorney (Lois A. Cullen* and *Gerald D. Reilly* of counsel), for respondent.

### OPINION OF THE COURT

DAMIANI, J. P.

In this case, the victim of an alleged larceny and burglary died prior to trial. The principal issue on this appeal is whether the evidence established that a burglary and larceny had been committed and that the defendant was one of the perpetrators thereof.

In order to establish the charge of petit larceny, the People were required to prove (1) ownership of the property in question, (2) a taking, or asportation, of that property, (3) that the taking was without the owner's consent, (4) that it was done by the defendant, and (5) that it was done with the intent to deprive the owner of the property or to appropriate the same to the defendant or a third person (see Penal Law, §§ 155.25, 155.05, subd 1). In order to establish burglary in the third degree, the People were required to prove (1) that the defendant (2) knowingly entered or remained in a building without license or privilege to do so (3) with the intent to commit a crime therein (see Penal Law, §§ 140.20, 140.00, subds 2, 5).

In support of these two charges the People proved that the alleged victim of the crimes, Mrs. Margaret Knight, lived in a small colonial house in the Village of Briarcliff Manor in Westchester County. The house shared a common driveway with the home of Mrs. Isabella Marsh and her son John. On September 12, 1973 Mrs. Marsh and Mrs. Knight had an appointment to go to the "Senior Club". Mrs. Marsh was to drive and, at about 10:55 A.M., she stopped her car in the driveway "right near" Mrs. Knight's home. She honked her horn, and about two minutes later, Mrs. Knight came out and

got in the car. While waiting, Mrs. Marsh noticed that the bedroom window of Mrs. Knight's home was closed. The two ladies then left for the senior citizens club.

At about 11:50 A.M. John Marsh was returning home and stopped his car in the street because he saw a station wagon parked approximately 50 feet up the common driveway which blocked his access. As he waited, Mr. Marsh noticed two Black men throwing things into the back of the station wagon. When these men saw Marsh waiting, they accelerated their actions, jumped in the car and came down the driveway towards him. As they passed, Mr. Marsh got a good look at the driver and took down the license plate number, but he did not take notice of the passenger who was looking in the opposite direction. He then ascended the driveway and saw that Mrs. Knight's bedroom window was open and the screen was "akimbo". The men had entered the house through this window. Upon making these observations, Mr. Marsh backed down the driveway and gave chase. When he lost sight of the car, he went to the headquarters of the Briarcliff Police Department where he told the police what had occurred and gave a description of the car and its driver and the license plate number. The police issued a radio alarm.

Detective Sergeant Richard J. Spota, of the North Tarrytown Police Department, testified that on the morning of September 12, 1973 he was in plain clothes and was patrolling in an unmarked car at the south end of the village. At about 12:00 noon, he received a radio transmission to be on the lookout for a green Chevrolet Vega, license plate number BCH 1. At about 12:20 P.M. he spotted this vehicle, occupied by two persons, proceeding at about 10 to 20 miles per hour on Cortlandt Street. He put on his siren to pull the vehicle over but it sped up to about 40 or 50 miles per hour. After a pursuit through several village streets, Detective Spota cut the vehicle off and apprehended its occupants. The driver was a man named Benjamin Richardson and the passenger was the defendant, Harry Shurn.

In the back of the station wagon, the police found a green and white tablecloth, an antique clock, silverware and a box of flatware. These items were photographed at the police station and were then turned over to Mrs. Knight. Mr. Marsh testified he helped Mrs. Knight bring them back to her home where he placed the clock on a "highboy" and the silverware on Mrs. Knight's table. Mrs. Marsh, who had known Mrs.

Knight for about 30 years, was shown the photograph taken by the police and testified that the antique clock and silver depicted therein all belonged to Mrs. Knight. John Marsh also testified that Benjamin Richardson, the man who was driving the car when stopped by Detective Spota, was the person who was driving when he observed it descending his driveway.

On appeal, defendant contends that the People failed to prove a prima facie case of burglary in the third degree and petit larceny. The fact of ownership of property may be proved by persons other than the owner (52A CJS, Larceny, § 134, p 668) and here, the testimony of Mrs. Marsh constituted direct evidence that the clock and silver belonged to Mrs. Knight. The testimony of Detective Spota that these items were found in a car occupied by the defendant some distance from Mrs. Knight's home established the asportation of the property by direct evidence.

It is the established rule that lack of consent to the taking of property may be proven by circumstantial evidence if the owner is dead or incompetent to testify (52A CJS, Larceny, § 135, p 671; *Cherry v State,* 120 Tex Cr Rep 590; *State v Skillings,* 99 NH 427). In this case the testimony established that when Mrs. Knight left her home the bedroom window was closed and that after the property had been taken the window was found open and the screen had been forced. Mr. Marsh testified, without objection, that the intruders had gained entry through the window and that they had hastily departed from the driveway when they discovered that he was watching. The jury could properly infer from this evidence of forced entry and flight that the taking of the clock and silver was without the consent of the owner. In addition this proof was competent to establish one of the elements of the burglary prosecution, namely, that the intruders knowingly entered Mrs. Knight's home without license or privilege to do so. The jury could also infer from these circumstances that the persons who forcibly entered Mrs. Knight's home and removed her property without consent, intended to commit the crime of larceny therein and intended to appropriate the clock and silver to themselves (12 CJS, Burglary, § 55; 52A CJS, Larceny, § 136, subd [1], pp 673-674).

Having thus established the fact that a larceny and burglary had taken place, the People were next required to fix the identity of the criminals. The salient evidence on this point was that two men were seen leaving Mrs. Knight's

house driving a green Chevrolet Vega station wagon bearing license plate number BCH 1. Within one-half hour thereafter, a police officer observed that vehicle being driven in a nearby community. After a high-speed chase, the car was stopped and the occupants were arrested. The driver was a man named Benjamin Richardson and the passenger was defendant. In the back of the station wagon, open to view, were the stolen antique clock and silver. The testimony of John Marsh that Benjamin Richardson, the driver arrested by Detective Spota, was the same person who drove the car from the place where the crime was committed, constituted direct evidence that Richardson was one of the two thieves. There was, however, no direct evidence that the defendant was the second thief.

One of the classical methods of fixing the identity of a criminal by circumstantial evidence is to infer that fact from the accused's possession of the fruits of a crime (1 Wigmore, Evidence [3d ed], § 152; *Knickerbocker v People,* 43 NY 177). It is the rule in this State that the conscious, recent and exclusive possession of the fruits of a crime constitutes prima facie evidence of criminality *(People v Galbo,* 218 NY 283; *Knickerbocker v People, supra; People v Foley,* 283 App Div 239, affd 307 NY 490). Ordinarily, where the prosecution proves that a larceny was committed and that the defendant was in conscious, recent and exclusive possession of the stolen goods, the jury is warranted in drawing the inference that the defendant was the thief *(People v Galbo, supra,* pp 290-291; Richardson, Evidence [10th ed], § 88, p 63; 1 Wigmore, Evidence [3d ed], § 152, p 598). Thus, standing alone, the inference arising from guilty possession is sufficient to constitute prima facie proof of the identity of the possessor as the perpetrator of the crime. Other facts in the case may, however, negate or change the nature of the inference to be drawn from guilty possession (see *People v Galbo, supra,* pp 291-294). The defendant himself may negate the inference of theft by offering a credible explanation to the effect that he acquired the property legally, or he may change the nature of the inference by explaining that he was merely a receiver of the stolen goods.

The inference to be drawn from the recent and exclusive possession of stolen goods is one of the oldest means of proving identity known to Anglo-American jurisprudence, dating back at least to the seventh century (see *Barnes v United States,* 412 US 837, 844, n 5). Its roots in the common law arise from

ordinary common sense and practical necessity. Because larceny, among other crimes, is often committed under covert circumstances, direct evidence of the identity of the thief is frequently unavailable to the prosecution (*Knickerbocker v People, supra,* p 182-183). The law fills this void with the common sense view that an innocent man is generally not in the exclusive possession of stolen property soon after the commission of the crime, and it therefore permits an inference that the possessor is the thief. As a practical matter, the law requires the possessor to explain the circumstances of his possession if he desires to overcome the inference of guilt arising therefrom because the facts as to that possession are peculiarly within his knowledge and ordinarily are not known or available to the prosecution (see *Anglin v State,* 244 Md 652, 658). The necessity to explain does not violate the accused's rights under the Fifth Amendment because it compels nothing. It leaves him free to testify or not as he chooses and, if he is the only person with knowledge of the facts necessary to negate the inference arising from his possession, that is a misfortune which the inference permitted by the common law has not created but which is inherent in the circumstances of the case (*Yee Hem v United States,* 268 US 178, 185; *Turner v United States,* 396 US 398, 417-418; *Barnes v United States,* 412 US 837, 846-847, *supra*).

The evidence in this case clearly establishes that defendant's possession was both conscious and recent. It plainly appears from the photographic evidence that the clock in question was massive and very distinctive and that it could not have gone unobserved by the occupants of the car. The station wagon was stopped and its occupants were arrested within 30 minutes of the theft.

The requirement that the defendant's possession be exclusive may be satisfied by possession which is joint with one or more persons if it is shown that they acted in concert (see 52A CJS, Larceny, § 107, subds b, c). The evidence established that the theft was committed by two men, who hastily placed the stolen goods in the rear of the station wagon and fled the scene together when observed by a neighbor. One of these men was identified as the driver of the car when it was subsequently stopped. The other man in the car when it was stopped was the defendant. The stolen property was still in the vehicle which the thieves used to transport it from the victim's home. The arrest occurred within one-half hour of the

theft. There was no evidence to show that the car had made any stops to transfer passengers. When these circumstances are taken together with the fact that the stolen property was found in open view in the back of the automobile, an inference of guilt may be raised against both the operator and passenger (see *People v Umphers,* 133 Ill App 2d 853; *Dinkins v State,* 29 Md App 577; *Cotton v State,* 247 Ind 56; *People v Reynolds,* 27 Ill 2d 523; cf. *People v Travato,* 309 NY 382, 385).

The dissent herein takes the position that the cases of *People v Travato (supra)* and *People v Jenkins* (23 AD2d 871) require that before the inference arising from guilty possession may be applied to a passenger of an automobile wherein stolen goods are found in open view, there must be "strong additional evidence connecting him with the crime." At least since 1870, with the case of *Knickerbocker v People* (43 NY 177, *supra),* it has been the law of this State that guilty possession alone, without the necessity of additional evidence, constitutes prima facie evidence of guilt sufficient to submit the case to the jury. It should be noted here that although not required by New York law, the flight of defendant and Richardson from the police did constitute such additional proof as it was a corroborative circumstance tending to support the inference of identity (see 52A CJS, Larceny, § 109, p 607). Even if the circumstance of flight were absent from the case, the inference to be drawn from the joint possession of defendant and Richardson would still apply. The *Travato (supra)* and *Jenkins (supra)* cases are not to the contrary. The distinction between those cases and the instant case is that there, explanations were offered for the defendants' possession whereas here, no explanation was forthcoming.

As stated above, the inference of guilt to be drawn from the possession of stolen property rests upon the possession itself, rather than upon the absence or insufficiency of an explanation thereof (see, also, 50 Am Jur 2d, Larceny, § 163, p 350). However, where an explanation is offered, the prosecution often prudently adduces proof that the explanation is false. Thus in *Travato (supra),* the defendant was a passenger in a car in the back seat of which stolen sewing machines were found. In order to show that his possession was innocent, defendant called the driver of the car who had previously pleaded guilty to the theft of the machines. If believed, the driver's testimony exonerated defendant. He claimed that he had left defendant off at a bar and grill and had promised to

call for him later after visiting a relative. The driver burglarized a factory, stole the machines, and then picked up defendant at the bar. Shortly thereafter they were apprehended by the police. This version of the facts, therefore, provided an innocent explanation for defendant's possession. In order to overcome the explanation, the prosecution adduced proof that defendant's hands and clothes were soiled with oil and grease containing cotton fibers, which were also found on the machines. This additional proof of defendant's connection with the fruits of the crime was required only because it negated defendant's explanation and tended to show that he acted in concert with the driver.

In *People v Jenkins* (23 AD2d 871, *supra)*, the defendant was charged with three pocketbook thefts. The testimony established that in each case the perpetrator snatched the handbag from its female owner and hurriedly entered a nearby automobile in which he was immediately driven from the area by another man. A few minutes after the third theft, the car collided with a truck about a block from the scene of the crime. Immediately thereafter the driver fled. Defendant was found lying prone on the front seat in a dazed condition. Two handbags were found on the floor in back of the front seat and the third in some shrubbery about 40 feet from the car. Defendant explained his presence by stating that he had been knocked down by the automobile and had thereafter apparently been placed on its front seat. In contradiction of this explanation, the three victims of the thefts all identified defendant as the thief. The *Jenkins* case is not particularly instructive since there was ample direct evidence that defendant was the perpetrator of the crime. In fact, this court in *Jenkins* noted that the trial court's charge on the scope of the inference to be drawn from recent and exclusive possession of the fruits of a crime was erroneous, but that the error was harmless in view of the ample other evidence in the case.

The case of *People v Mobley* (33 AD2d 888), cited in the dissent, is also inapposite. *Mobley (supra)* holds that the inference to be drawn from the recent and exclusive possession of the fruits of a crime may not be applied to a passenger where the automobile itself is the thing that was stolen. Here, one count of the indictment against defendant, charging him with the theft of the station wagon, was dismissed by the trial court on precisely this ground. However, the *Mobley* holding

has no applicaton to stolen goods found inside the car (see *People v Jenkins, supra).*

The evidence concerning defendant's possession of the large clock and silverware clearly indicates that the jury was warranted in inferring that defendant was one of the thieves. None of the circumstances of this case render this conclusion doubtful or improbable and no explantion was offered for defendant's presence in the car which would negate the inference that he was one of the thieves or change the nature of the inference to show that he was a mere accessory after the fact or receiver of stolen goods. Thus, the People proved a prima facie case of burglary in the third degree and petit larceny. Defendant's trial was fair and the court's charge on circumstantial evidence and the inference to be drawn from the possession of the fruits of a crime was comprehensive. The circumstantial evidence of defendant's identity, namely his totally unexplained possession of the fruits of the crime, was more than ample to support the present conviction. Defendant's other contentions are without merit.

Accordingly, the judgments appealed from should be affirmed.

LAZER, J. (dissenting in part and concurring in part). By its holding in this case, the majority is establishing a rule of law that a passenger's presence in the front seat of a vehicle in which recently stolen goods are found in the rear is sufficient evidence—standing alone—to convict him of burglary and petit larceny relative to those goods. The rule finds support in only a minority of jurisdictions in this country.

In this State, there is no reported case where such a passenger has been convicted in the absence of strong additional evidence connecting him with the crime. The rule here is that a jury may properly infer recent and exclusive possession of the fruits of a crime from circumstances, but the circumstances must be established by clear and convincing evidence and must be of such a character as, if true, to exclude to a moral certainty every other inference but that of recent and exclusive possession by the defendant *(People v Foley,* 307 NY 490). In *People v Travato* (309 NY 382), for example, where cotton fibers similar to those found on the stolen sewing machines were discovered on the defendant passenger's clothes and under his fingernails, the court viewed the evidence as sufficient to sustain the conviction on the basis of recent and exclusive possession of the fruits of crime

(although the conviction was reversed on other grounds). In *People v Jenkins* (23 AD2d 871) the defendant passenger had been identified as the purse snatcher by the complainants. In *People v Mobley* (33 AD2d 888), where the fruit of the crime was the vehicle itself, the larceny conviction of the defendant passenger was reversed upon the ground that the inference "does not apply where the defendant is not the driver unless there is proof that the defendant was in exclusive possession".

Convictions of passengers based on the inference of exclusive possession of stolen goods found in the vehicle have been sustained in other jurisdictions where there was evidence that the defendant knew of the presence of or exercised dominion over the stolen goods (see, e.g., *Martinez v People,* 162 Col 195; *Irby v United States,* 342 A2d 33 [DC]; *People v Pughsley,* 73 Ill App 2d 442; *State v Prunty,* 276 Mo 359), or was present at the scene of the crime (see, e.g., *State v Cobb,* 444 SW2d 408 [Mo]; *Cotton v State,* 247 Ind 56) or had been in the company of the driver continuously both before and after the commission of the crime (see, e.g., *Commonwealth v Gusciora,* 169 Pa Super Ct 27), but have been reversed in the absence of such evidence (see, e.g., *State v Andrade,* 83 Ariz 356; *State v Mosher,* 270 A2d 451 [Me]; *State v Schleicher,* 438 SW2d 258 [Mo]). Courts in Illinois and Maryland have adopted what appears to be a minority view that exclusive possession may be inferred from the defendant's mere presence as a passenger and that no additional evidence is required to support a conviction (see *People v Umphers,* 133 Ill App 2d 853; but see *People v Pughsley, supra; People v Bullion,* 299 Ill 208; *Dinkins v State,* 29 Md App 577).

The majority's citations to *Cotton v State (supra)* and *People v Reynolds* (27 Ill 2d 523) are inapposite since in *Cotton (supra)* there was evidence placing the defendant at the scene of the crime and in *Reynolds (supra)* the stolen merchandise filled the whole interior of the vehicle and the defendant was actually sitting on top of some of it.

As the majority declares, there is here no direct evidence which places defendant at the scene of the crime. Nor is there any evidence that he was aware of the stolen goods in the rear of the vehicle or exercised any dominion over them or that he was engaged in a conspiracy with the driver to commit the crime alleged. The *only* additional evidence shown—the vehicular flight from the police—does not provide the additional proof necessary to sustain the conviction. Flight is circumstan-

tial evidence of slight probative value *(People v Yazum,* 13 NY2d 302) and it is of no value whatever unless there are facts pointing to the motive which prompted it *(People v Kreichman,* 37 NY2d 693; *People v Fiorentino,* 197 NY 560). Here, the same evidence which might establish exclusive possession in the defendant would be necessary to prove a motive for flight on his part. Furthermore, there is no evidence that defendant himself—a passenger—intended to flee (cf. *People v Carter,* 27 AD2d 589).

I dissent and vote to reverse the burglary and larceny convictions.

SUOZZI and RABIN, JJ., concur with DAMIANI, J. P.; LAZER, J., concurs as to affirming the judgment convicting defendant of unauthorized use of a vehicle, but otherwise dissents and votes to reverse the burglary and petit larceny convictions under Indictment No. 73-00994 and to dismiss that indictment, with an opinion.

Two judgments of the Supreme Court, Westchester County, both rendered March 11, 1975, affirmed.